UNITED STATES, Appellee,

v.

Anthony Jon ALLARD, Hull
Technician Fireman, U.S.
Navy, Appellant.

No. 49,350.

NMCM 83 3347.

U.S. Court of Military Appeals.

April 8, 1985.

For Appellant: *Lieutenant Colonel M.W. Lucas,* USMC (argued); *Lieutenant Mark A. Zuboff,* JAGC, USNR (on brief).

For Appellee: *Lieutenant Steven P. Benson,* JAGC, USNR (argued); *Captain W.J. Hughes,* JAGC, USN, and *Lieutenant Sandra R. Ganus,* JAGC, USNR (on brief).

*Opinion of the Court*

EVERETT, Chief Judge.

Contrary to appellant's pleas, a military judge sitting alone as a special court-martial found him guilty of distributing 17 grams of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The convening and supervisory authorities approved these findings and the sentence to a bad-conduct discharge, confinement at hard labor and partial forfeitures of pay for 5 months, and reduction to E-1. After the United States Navy-Marine Corps Court of Military Review affirmed, this Court granted review to consider whether the military judge committed prejudicial error in preventing appellant from introducing evidence of his truthful character. 18 M.J. 292 (1984).

## I

The Government's case-in-chief consisted of the testimony of Seaman Gary Wilson, an undercover informant for the Naval Investigative Service. Wilson asked appellant, who was one of his shipmates, "where ... [he] could get some 'smoke'"; and Allard replied that "he'd look around." Subsequently, Wilson purchased marihuana from appellant. Wilson was cross-examined about his undercover activities; and in response to a government objection to one of the questions, defense counsel explained that he was seeking "to show motive to fabricate."

After the Government rested, appellant took the stand as the only defense witness. According to him, Wilson "wanted to purchase drugs from me, and I told him he was crazy." The next day, he had a hostile encounter with Wilson. On cross-examination about his relationship with Wilson, appellant testified that, after he had refused to sell drugs, they "exchanged dirty looks" whenever they ran into each other on their ship. In response to the question, "You're testifying that Wilson is lying," appellant answered in the affirmative.[1] Upon questioning by the military judge, appellant acknowledged that he believed that Wilson had made up his story because of their argument.

In rebuttal, the prosecution called Radioman Chief David Sands to testify about Wilson's character for truthfulness. The defense objected unsuccessfully on the ground that they had not been informed of this witness, although they had requested such information. Subsequently, the defense proposed to call Lieutenant Herbert Loughery to testify about appellant's truthful character. Defense counsel argued that, because appellant's and Wilson's testimony were contradictory, appellant's credibility had been attacked. Moreover, appellant would be prejudiced if he were not allowed to offer a character witness as to his veracity, because the Government had been allowed to bolster Wilson's credibility with the character testimony of Chief Sands. The military judge excluded this evidence on the ground that it would be improper to bolster Allard's credibility "absent some extrinsic attack or scathing cross-examination of the accused."

In his closing argument, trial counsel contended that Allard's version of events "just is not credible," but "[t]he scenario set forth by Wilson is credible." Elaborating on this point, he noted later in his rebuttal argument that

> a one-on-one drug buy by its very nature requires the court believe one or the other people who testified. The government believes that the story put forth by Wilson is credible, that Wilson is a credible witness, and, in fact, what occurred—what he's testified occurred, in fact, occurred.[2] And again, it's the question of credibility between the two people who testify. Again, a one-on-one transaction, it's not expected that the government bring in 132 witnesses who would have seen the transactions go down. By its very nature, it's only the informant against the person who sold the marihuana ....

## II

According to Mil.R.Evid. 608(a)(2), evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence *or otherwise*.

(Emphasis added). We explained in *United States v. Everage*, 19 M.J. 189, 192 (C.M.A. 1985), that the phrase "or otherwise" may include "slashing cross-examination"—as had occurred there. *See also United States v. Medical Therapy Sciences, Inc.*, 583 F.2d 36 (2d Cir. 1978), *cert. denied*, 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979); *United States v. Lechoco*, 542 F. 2d 84 (D.C. Cir. 1976).

---

1. We need not discuss the form of this question since there was no defense objection.

2. *See United States v. Clifton*, 15 M.J. 26, 30 n. 5 (C.M.A. 1983).

The attack that triggers the opportunity for rehabilitation need not take [the] form of negative character testimony. Anything that implies the untruthfulness of the witness—slashing cross-examination for example [citation omitted]—may satisfy the "or otherwise" language of the Rule.

S. Saltzburg, L. Schinasi, and D. Schlueter's *Military Rules of Evidence Manual* 288 (1981). The means by which credibility has been attacked is immaterial, because it would be illogical to hold that the right to rehabilitate a witness depends on the manner in which his truthfulness was impugned.

Presumably, trial counsel relied on Mil.R. Evid. 608(a)(2) in offering the testimony of Chief Sands to bolster Wilson's credibility. Because Allard himself had averred that Wilson was lying, there can be little doubt that the defense was attacking his credibility. Indeed, in this type of case—as trial counsel's final argument makes clear—typically the chief issue for the factfinder will be the respective credibility of the prosecution witness and the accused. Thus, the Government was entitled to rehabilitate its sole witness.

Once this evidence as to Wilson's veracity had been introduced by the Government, the military judge should have recognized that appellant's credibility was equally in issue. As should have been apparent then, the prosecutor was not trying to establish that, although Allard was "well-intentioned and seeks to tell the truth, his observation of events was faulty" or "his memory ... [was] poor." *See* 19 M.J. at 193. Instead, trial counsel sought to convince the factfinder that Wilson—not Allard—should be believed with respect to matters as to which only one of them could be testifying honestly.

■ Although appellant was entitled to offer evidence as to his truthful character, the Government argues that the exclusion of this evidence was not prejudicial, because trial was by a military judge—rather than by court members as in *Everage*. Frequently, an appellate court upholds the findings of a trial judge despite his reception of inadmissible evidence because they assume that the judge disregarded this evidence. However, there is no precedent for inferring here that a trial judge would have given some weight to the character evidence which he improperly excluded. Since the issue of guilt or innocence had resolved itself into a swearing contest between Wilson and appellant, we must conclude that Allard was prejudiced here—just as was the accused in *Everage*.

The decision of the United States Navy-Marine Corps Court of Military Review is reversed, and the findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Judge COX concurs.

Judge FLETCHER did not participate.