**UNITED STATES, Appellee**

v.

**Roberto TORO, Jr., Sergeant U.S. Air Force, Appellant.**

**No. 67,811.**
**CMR No. 28653.**

U.S. Court of Military Appeals.

Argued April 6, 1993.

Decided Aug. 3, 1993.

**314**

For Appellant: *Eugene R. Fidell* (argued); *Paul M. Tendler, Colonel Terry J. Woodhouse, Captain Gilbert J. Andia, Jr.* (on brief); *Colonel Jeffrey R. Owens, Major Alice M. Kottmyer, Captain Richard W. Aldrich.*

For Appellee: *Captain Jane M.E. Peterson* (argued); *Colonel Richard L. Purdon* and *Lieutenant Colonel Jeffery T. Infelise*

1. We also granted review on issues regarding appointment of trial and appellate judges in violation of the Appointments Clause. Since the grant of review in this case we have held against

(on brief); *Lieutenant Colonel Brenda J. Hollis.*

## Opinion of the Court

CRAWFORD, Judge.

Appellant was convicted by court members, contrary to his pleas, of three specifications of using methamphetamines, one specification of introducing methamphetamines onto a military facility, and two specifications of distributing methamphetamines, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a dishonorable discharge, confinement for 7 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the adjudged sentence. The Court of Military Review affirmed the findings and sentence. 34 MJ 506 (1991). We granted review of three issues, which are listed below in the order they are treated in this opinion:

### I

WHETHER IT WAS ERROR TO ADMIT PROSECUTION EXHIBITS 8–12, 14–16, AND 18–28, THE PRIOR STATEMENTS OF PROSECUTION WITNESSES.

### II

WHETHER APPELLANT WAS UNFAIRLY PREJUDICED BY "HUMAN LIE–DETECTOR" TESTIMONY OF AN OSI SPECIAL AGENT.

### III

WHETHER TRIAL COUNSEL'S ARGUMENT ON SENTENCE WAS UNFAIR BECAUSE IT IMPROPERLY PENALIZED APPELLANT FOR NOT ADMITTING HIS GUILT.[1]

We hold that appellant waived any potential error by not objecting at trial and that there is an absence of plain error. *See*

appellant's position on both issues in *United States v. Weiss*, 36 MJ 224 (CMA 1992), *cert. granted*, — U.S. —, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993).

*generally United States v. Olano,* — U.S. —, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Fisher,* 21 MJ 327 (CMA 1986).

## DISCUSSION

■ As the opening statements indicated, this case centered on the credibility of five informants who testified for the Government at trial. There are three evidentiary stages which concern the credibility of witnesses at trial: bolstering, impeachment, and rehabilitation.

Bolstering occurs before impeachment, that is, when the proponent seeks to enhance the credibility of the witness before the witness is attacked. *Laughlin v. United States,* 385 F.2d 287 (D.C.Cir.1967), *cert. denied,* 390 U.S. 1003, 88 S.Ct. 1245, 20 L.Ed.2d 103 (1968); *United States v. Dunlap,* 25 MJ 89 (CMA 1987).

Impeachment occurs after a witness testifies. The methods of impeachment include: character trait for untruthfulness—Mil.R.Evid 608(a), Manual for Courts–Martial, United States, 1984; prior convictions—Mil.R.Evid. 609(a); instances of misconduct not resulting in a conviction—Mil. R.Evid. 608(b); prior inconsistent statements—Mil.R.Evid. 613; prior inconsistent acts—*cf. Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); bias—*United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), and Mil. R.Evid. 608(c); and specific contradiction.

Rehabilitation occurs after a witness' credibility has been attacked. Rehabilitation can take many forms, including explanations on redirect examination, corroboration, a character trait for truthfulness, or prior consistent statements—Mil.R.Evid. 801(d)(1)(B).

Issues I and II concern rehabilitation of the informants by prior consistent statements and by presenting evidence of a character trait for truthfulness, respectively. During redirect examination the Government sought to rehabilitate its witnesses by introducing their prior consistent statements. The Government also sought to introduce evidence as to their character traits for truthfulness.

## I

### Prior Consistent Statements

■ Prior to enactment of the Federal Rules of Evidence, which are the source of the Military Rules of Evidence, courts generally allowed consistent statements to be admitted for rehabilitative purposes only and not as substantive evidence. 4 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 801(d)(1)(B)[01] at 801–187 (1992). Indeed, at common law, even consistent statements were not generally admitted unless the statements were made before the existence of a motive to fabricate. *Id.* at 801–185 to 801–187. Enactment of the Federal Rules of Evidence did not change the common law rule concerning receipt of consistent statements. *Cf. United States v. Abel,* 469 U.S. at 49 and 51, 105 S.Ct. at 467 and 468 (1984) (recognized bias as method of impeachment even though not in Fed.R.Evid.).

In *United States v. McCaskey,* 30 MJ 188, 192 (CMA 1990), this Court stated that "Mil.R.Evid. 801(d)(1)(B) generally was intended to be limited to prior consistent statements made before the alleged recent fabrication or improper influence or motive occurred." In applying this rule, the military judge must determine, with the aid of counsel, when the motive to fabricate occurred, *e.g.,* at trial or before trial; whether the statement sought to be admitted rebuts the recent fabrication, improper influence or motive; and whether the prior statement is relevant. *See United States v. Montague,* 958 F.2d 1094, 1098 (D.C.Cir. 1992).[2] Even if these prerequisites are sat-

---

**2.** There is a split in the circuits, *see United States v. Montague,* 958 F.2d 1094, 1099 (D.C.Cir.1992), and the differences in individual cases can be reconciled by collapsing the authorities "into one principle that would be consistent with the goals of the Federal Rules of Evidence and common law precedents. Any statement, even one made after a motive to falsify has arisen, may be used under Rule

isfied, the judge should apply the balancing test under Mil.R.Evid. 403. *Id.*

Here the defense objected only to a redacted version of one statement going to the members instead of the complete statement. Had the defense objected to the statements in their entirety, the prosecution would have been asked to prove whether the motive to fabricate occurred at trial or at the time the witnesses were hopeful of seeking leniency from agents of the Air Force Office of Special Investigations (OSI).

 It appears from the opening statements and throughout the record of trial that the defense strategy was to portray the undercover informants as untruthful witnesses who were skimming drugs from their buys and stealing some of the controlled money. Indeed, the defense was also interested in the members' receiving the pretrial statements because many of those statements were inconsistent with the witnesses' testimony. That defense strategy was to portray each of the five informants as anxious to please the OSI in return for leniency. The defense argued that the names they gave to the OSI were based upon the personnel roster, but were not sufficient alone to the investigators. The agents wanted more information including the proverbial who, what, when, where, why, and how. Each of the informants was strongly encouraged to cooperate and describe the alleged incidents more fully. The defense argued that the witnesses thought this cooperation meant pleasing the agents by fabricating what they saw. The defense further argued that this attitude to please resulted in innumerable inconsistencies in the informants' statements which are irreconcilable with their testimony given at trial. Thus the defense did not object when the Government introduced the prior consistent statements of the informants. This failure to object constitutes waiver of any error in

the absence of plain error. *United States v. Olano,* — U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Fisher,* 21 MJ 327 (CMA 1986).

In reviewing for plain error we can draw parallels between Fed.R.Crim.P. 52(b) [3] and similar provisions in the Uniform Code of Military Justice and the Military Rules of Evidence. Mil.R.Evid. 103(d) provides: "Nothing in this rule precludes taking notice of plain errors that materially prejudice substantial rights although they were not brought to the attention of the military judge." Article 59(a), UCMJ, 10 USC § 859(a), provides: "A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."

In analyzing Fed.R.Crim.P. 52(b) the Supreme Court in *United States v. Olano, supra,* asserted a conviction should not be overturned unless three factors are satisfied: First, there must be an "error." — U.S. at ——, 113 S.Ct. at 1777. Second, the error must "be 'plain.' 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' " — U.S. at ——, 113 S.Ct. at 1777. And, third, the error must "affec[t] substantial rights." — U.S. at ——— – ——, 113 S.Ct. at 1777–78.

Even when these factors are satisfied, Fed.R.Crim.P. 52(b) is "permissive, not mandatory. If the forfeited error is 'plain' and 'affec[ts] substantial rights,' the Court of Appeals has authority to order correction, but is not required to do so." — U.S. at ——, 113 S.Ct. at 1778. The Court has previously "explained that the discretion" under Fed.R.Crim.P. 52(b) "should be employed 'in those circumstances in which a miscarriage of justice would otherwise result.' " — U.S. at ——, 113 S.Ct. at 1779, quoting *United States v. Frady,* 456 U.S. 152, 163 n.14, 102 S.Ct. 1584, 1592 n.14, 71 L.Ed.2d 816 (1982). "The Court of Appeals

---

801(d)(1)(B) if it tends to disprove a suggestion that a witness is not telling the truth."
S. Saltzburg and M. Martin, 2 Federal Rules of Evidence Manual 144 (5th ed. 1990).

3. Fed.R.Crim.P. 52(b) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

should no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant, but we have never held that a Rule 52(b) remedy is *only* warranted in cases of actual innocence." —— U.S. at ——, 113 S.Ct. at 1779.

Assuming arguendo that the military judge erred by admitting the prior consistent statements of the informants, the error did not constitute plain error. Admission of the statements was clearly part of the defense strategy, and it did not affect a substantial right of appellant. The powerful nature of the evidence from the witnesses was demonstrated by the summary chart used before the members.[4] *See* Appendix. Thus we conclude that introduction of the government informants' prior consistent statements did not amount to plain error.

## II

### Character Evidence for Truthfulness

■ Issue II also revolves around the testimony of the five undercover sources. To rehabilitate their credibility on redirect examination, the Government called OSI Special Agent Wayne Keller. He testified, based on his contacts with five of the undercover sources, that he was of the opinion that they were reliable, credible and trustworthy. He also indicated that they were among the "very best sources" that he had worked with in over 10 years. The defense argues that this testimony is prohibited. *See, e.g., United States v. Harrison*, 31 MJ 330 (CMA 1990).

Mil.R.Evid. 608(a) provides that a witness may testify as to the reputation or opinion of an individual for truthfulness when the witness' character "for truthfulness has been attacked by opinion or reputation evidence or otherwise."

The defense argues that there are two limitations on Mil.R.Evid. 608(a). First, the character of the witness for truthfulness must have been "attacked by opinion or

reputation evidence or otherwise." *Id.* Second, the evidence sought to be admitted is limited to character evidence for "truthfulness or untruthfulness." *Id.*

■ There is a third limitation. Opinion-or-reputation-type evidence may only be introduced when a proper foundation has been laid. The proponent must show that the character witness who will testify as to the witness' reputation resides or works in the same community as the witness and has lived or worked in the community long enough to have become familiar with the witness' reputation in the community. *Cf. Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Tomchek*, 4 MJ 66, 77 (CMA 1977) (Cook, J., dissenting). The term "community in which he lives" is not subject to an exact geographical location, but means an area where a person is well known and has established the reputation. *See also United States v. Crowell*, 6 MJ 944 (ACMR), *pet. denied*, 7 MJ 249 (1979). To lay a proper foundation for opinion evidence, the proponent must show that the character witness personally knows the witness and is acquainted with the witness well enough to have had an opportunity to form an opinion of the witness' character for truthfulness. In *United States v. Perner*, 14 MJ 181, 184–85 (CMA 1982), this Court held that an enlisted psychiatric technician who "had seen" the accused's "wife professionally" on three occasions did not enjoy a sufficiently close relationship to express an opinion as to untruthfulness.

The defense concedes, Final Brief at 16, that the first limitation has been satisfied, recognizing that this Court has indicated that when there is a "slashing cross-examination," the term "or otherwise" has been met. *United States v. Everage*, 19 MJ 189, 192 (CMA 1985). *Cf.* Uviller, *Credence, Character, and the Rules of Evidence: Seeing through the Liar's Tale*, 42 Duke L.J. 776, 795 n. 36 (1993) ("But rather than intensity, the key factor is the implication of bad character in the substance of the

---

4. The summary chart introduced at trial, which is attached as an appendix, showed appellant's

involvement with key prosecution witnesses at various times and places.

cross-examination."). Also, rehabilitation has been permitted when the cross-examination was done in such a manner as to induce the belief of untruthfulness. *United States v. Allard,* 19 MJ 346 (CMA 1985).

We need not decide whether there was a slashing cross-examination or an examination conducted to induce a belief of untruthfulness because the defense failed to object. The testimony that the informants were the "very best sources" appears to violate the rules because it does not involve traditional veracity evidence. Moreover, the prosecutor did not seek to lay a proper foundation for reputation or opinion evidence as to the witnesses' truthfulness. Had an objection been made to the lack of a proper foundation or to the testimony that they were the "very best sources" the judge could have taken curative measures. However, the defense did not object and thereby waived the error absent a finding of plain error. Mil.R.Evid. 103(d). Here the "best source" statement "did not affect a substantial right" of appellant. *United States v. Olano,* —— U.S. at ——, 113 S.Ct. at 1777. The military judge instructed the members that it was for them "to determine the credibility of the witnesses; that is their worthiness of belief." This includes an examination of the witness' character for honesty. Appropriately, the instruction did not reference the "best source," because such testimony does not relate to a character trait for truthfulness and could not have affected a substantial right of appellant.

### III

### Sentencing Argument

■ During the prosecutor's sentencing argument, he rhetorically asked, Do you see "[a]nywhere [in appellant's unsworn statement] that he acknowledges your finding of guilty? No." Despite the lack of any objection to this comment, appellate defense counsel now argues that this is an improper argument because it penalizes appellant for not admitting his guilt.

The military defendant has three options during sentencing. The defendant may testify under oath, make an unsworn statement, or not give any statement at all. RCM 1001(c)(2)(A), Manual, *supra.* The defendant also has the right to have live witnesses testify during pre-sentence procedures. RCM 1001(e).

■ After evidence is presented by the prosecution and the defense, both the prosecutor and the defense counsel have a chance to argue before the factfinder. RCM 1001(a)(1)(D) and (E). It is axiomatic that the prosecution may not comment on the defendant's right to remain silent— *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); mischaracterize the evidence—*United States v. Carroll,* 678 F.2d 1208 (4th Cir.1982); or refer to the bias and prejudices of the court members—*see, e.g., United States v. Begley,* 38 CMR 488, 495 (ABR 1967). While the prosecutor "may strike hard blows, ... they must be fair" blows. *United States v. Doctor,* 7 USCMA 126, 133, 21 CMR 252, 259 (1956). It is proper for the prosecutor to comment on appellant's refusal to admit guilt after the "accused has either testified or has made an unsworn statement and has either expressed no remorse or his expressions of remorse can be arguably construed as being shallow, artificial, or contrived." *United States v. Edwards,* 35 MJ 351, 355 (CMA 1992). In *Edwards* we did not find error based on a second comment by the prosecutor: "When you consider ... his lack of remorse...." As Judge Cox said, "It is the duty of this advocate [defense counsel] to ferret out improper argument, object thereto, and seek corrective action in the nature of instructions or a mistrial if the argument is so outlandish that it is incapable of being cured." *Id.* at 354. During his unsworn statement, appellant expressed no remorse. When viewed in context and not in isolation, assuming any error, there was no plain error which precludes waiver from the failure to object. *See United States v. Causey,* 37 MJ 308 (CMA 1993).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and GIERKE concur.

# APPENDIX

## SUMMARY CHART

| ACCUSED | TIMES | LOCATION | DATES | DISTRIBUTOR | OTHERS PRESENT | APPLICABLE CHARGE AND SPECIFICATION |
|---|---|---|---|---|---|---|
| AND | 50 USES | KUNSAN TAEGU OSAN -Ms Lee's -Chun-ll | Jan-Jun 87 Jan-Apr 88 Dec 88 | ACCUSED MS LEE BARRILLEAUX | MS LEE LYONS BEASON ROSSI SEVERAL OTHERS | Use in Korea (Ch: Spec 1) |
| BARRILLEAUX | 1 USE Distrib Intro | YOKOTA -Franklin's Room | 4-5 Jan | ACCUSED | FRANKLIN ARENDS | Use in Japan (Ch: Spec 2) Introduction to Yokota (Ch: Spec 4) Distribution in Japan (Add Ch: Spec 1) |
| LYONS | 1 Use | OSAN -Chun-ll TAEGU -Ms. Lee's -Chun-ll | Jan-Jun 87 | ACCUSED | ONLY ACCUSED | Use in Korea (Ch: Spec 1) |
| BEASON | 8-9 Uses | OSAN | Jan-Apr 88 | MS LEE | MS LEE BARRILLEAUX | |
| | 3 Uses | OSAN -Ms. Lee -Chun-ll | Spring 87 Spring 88 | MS LEE | MS LEE BARRILLEAUX LYONS | Use in Korea (Ch: Spec 1) |
| | 1 Use 1 Distrib | TAEGU | Jan-Feb88 | MS LEE ACCUSED | MS LEE ONLY ACCUSED | Distribution in Korea (Add Ch: Spec 2) |
| | 1 USE | YOKOTA -Beason's Apartment | Oct/Nov88 | BEASON | ONLY | Use in Japan (Ch: Spec 2) |
| | 1 USE Intro | YOKOTA -Accused's Room | Oct/Nov88 | ACCUSED | DIAMOND | Introduction to Yokota (Ch: Spec 4) |
| KINLEY | 2 USES | OSAN -Ms. Lee's | JUL-Oct88 | MS LEE | MS LEE FRANKLIN | Use in Korea (Ch: Spec 1) |
| | 3 USES | OSAN -Ms. Lee's -Chun-ll's | Sep 88 | MS LEE FRANKLIN | MS LEE | Use in Korea (Ch: Spec 1) |
| FRANKLIN | 1 USE | YOKOTA -Franklin's Room | 4-5 Jan89 | ACCUSED | BARRILLEAUX ARENDS | Use, Distrib in Japan (Ch: Spec 2, Add Ch: Spec 1) Intro to Yokota (Ch: Spec 4) |
| | 2 USES | VILLA MODESTA CLARK -Chun-ll | 7-8 Jan89 | ACCUSED ACCUSED | ARENDS ACCUSED | Use in the Philippines (Ch: Spec 3) |

WISS, Judge (concurring in part and in the result):

I concur in the majority opinion except for its reliance on the plain-error test announced by the Supreme Court of the United States in *United States v. Olano*, — U.S. —, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). This Court's plain-error standard set out in *United States v. Fisher*, 21 MJ 327, 328 (CMA 1986), substantively parallels the *Olano* formulation except in one respect: Even if all three prongs of the standard are met, *Olano* does not require, but only permits, remedial action by the appellate court.

I know of no case in our precedent in which this Court has found that an error was obvious, substantial, and *had an unfair prejudicial impact on the accused* and, yet, did not afford the accused a remedy. *See* Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a). Inasmuch as the question whether our steadfast precedent that is reflected in *Fisher* can (*see* Art. 59(a)) and should give way to the *Olano* articulation is not squarely presented and developed by the parties for decision, I decline to make that step. Applying the *Fisher* test, though, I agree with the majority's conclusion of no plain error in this case.

SULLIVAN, Chief Judge (concurring in the result):

Since I concur only in the result reached in the majority opinion, I must write separately to briefly address three issues. First, to the extent that Part I of the opinion suggests that prior consistent statements made after the alleged motive to fabricate are admissible under Mil. R.Evid. 801(d)(1)(B), Manual for Courts-Martial, United States, 1984, 37 MJ at 315–316 n.2, I interpret this to be inconsistent with current military law. *See United States v. McCaskey*, 30 MJ 188, 192–93 (CMA 1990). A prior consistent statement may be admitted under Mil.R.Evid. 801(d)(1)(B) only if made prior to when the alleged motive to fabricate arose. *Id.*

Second, the failure of defense counsel to object when the Government introduced the prior consistent statements of the informants constitutes "forfeiture" of the error, not "waiver," 37 MJ at 316. *See United States v. Olano*, — U.S. —, —, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993)("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' "). I recognize that this Court has used waiver as synonymous with forfeiture. However, "the right at stake," *id.*, will determine whether the right can be forfeited merely by failure to assert that right or whether the known right can be waived only by the relinquishment or abandonment of the right. *Compare United States v. Fisher*, 21 MJ 327 (CMA 1986) (forfeiture of right to have military judge instruct members on the order of voting on proposed sentences), *with United States v. Davis*, 3 MJ 430, 433 (CMA 1977) (waiver of right to conflict-free counsel requires voluntary, intelligent, and knowing relinquishment). In the case *sub judice*, appellant forfeited his right to exclude the prior consistent statements of the government informants by not objecting.

Finally, in Part III of the majority opinion, Judge Crawford offers no conclusion as to whether trial counsel's comment during closing argument on sentencing was error. 37 MJ at 318. I would unequivocally conclude that trial counsel's comment on appellant's failure to acknowledge guilt in his sworn statement was not error. *United States v. Edwards*, 35 MJ 351, 355 (CMA 1992).