OPINION OF THE COURT
CAIRNS, Senior Judge:
At a fully contested general court-martial, a panel of officer and enlisted members found the appellant guilty of conspiracy to commit larceny, wrongful possession of marijuana, larceny, removal of property to prevent seizure, and solicitation to commit larceny in violation of Articles 81, 112a, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 912a, 921, and 934 [hereinafter UCMJ]. The convening authority approved the sentence of a bad-conduct discharge, confinement for eight years, forfeiture of all pay and allowances, and reduction to Private El.
In conducting our Article 66, UCMJ, review, we have examined the record of trial and considered the briefs submitted by the parties, as well as the matters personally raised by the appellant pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982). We heard oral argument while sitting by special designation at the United States Military Academy, West Point, New York. The appellant has assigned four errors:
I.
THE EVIDENCE IS LEGALLY AND FACTUALLY INSUFFICIENT TO SUPPORT A CONVICTION OF CHARGE V AND ITS SPECIFICATION (REMOVAL OF PROPERTY TO PREVENT SEIZURE) BECAUSE THERE IS NO EVIDENCE THAT APPELLANT KNEW THAT ANY PROPERTY WAS ABOUT TO BE SEIZED BY AUTHORIZED PERSONS AND BECAUSE APPELLANT COULD NOT HAVE PHYSICALLY TRAVELED THE DISTANCE *930 REQUIRED TO REMOVE THE PROPERTY DURING THE TIME WINDOW OF OPPORTUNITY.
II.
THE MILITARY JUDGE ERRED AS A MATTER OF LAW WHEN HE IMPROPERLY ADMITTED PROSECUTION EXHIBIT 32 AS A PRIOR CONSISTENT STATEMENT OF THE KEY GOVERNMENT WITNESS PURSUANT TO MIL.R.EVID. 801(D)(1) WHERE THE PRIOR CONSISTENT STATEMENT CORROBORATING IN-COURT TESTIMONY OF THAT WITNESS WAS MADE AFTER THE WITNESS HAD A MOTIVE TO FABRICATE.
III.
SPECIFICATION 1 OF CHARGE I (CONSPIRACY TO COMMIT LARCENY) AND SPECIFICATION 1 OF CHARGE VII (SOLICITATION TO COMMIT LARCENY) ARE MULTIPLI-CIOUS FOR FINDINGS BECAUSE THE MILITARY JUDGE FOUND THAT BOTH SPECIFICATIONS WERE MUL-TIPLICIOUS FOR SENTENCING WHERE SUCH A DISTINCTION NO LONGER EXISTS.
IV.
THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE DENIED DEFENSE MOTION TO CHALLENGE FOR CAUSE A PANEL MEMBER WHO WAS THE VICTIM OF TWO LARCENIES, REGULARLY DEALT WITH MILITARY POLICE OFFICERS AND INVESTIGATORS IN HIS DUTY POSITION, STATED THAT HE WOULD BELIEVE POLICE OFFICERS OVER OTHER WITNESSES, AND HIGHLY REGARDED OPINIONS EXPRESSED BY THE UCMJ, ART. 32 INVESTIGATING OFFICER.
The government concedes that under the unique facts of this case the offenses of conspiracy to commit larceny and solicitation to commit larceny are multiplicious for findings. We accept the government’s concession and will dismiss the solicitation offense to cure the findings error. The appellant suffered no prejudice as to his sentence, however, because the military judge instructed the members to consider the offenses to be one offense for sentencing. As to the remaining contested issues, we find the facts insufficient to support the findings of guilty to Charge V and its Specification, removal of property to prevent seizure. We will, therefore, set aside the findings of guilty to that charge and specification and reassess the sentence. We resolve the remaining two assignments of error against the appellant.
I. FACTS
The charges stem from a scheme, hatched by two of appellant’s subordinate squad members, to steal merchandise from various Army and Air Force Exchange Service (AAFES) facilities in Germany. The squad members, Privates Delonget and Rideout, affixed stolen AAFES security tape to merchandise and walked out of the facilities as if they had purchased the items. As their squad leader, the appellant learned of the scam and approached Delonget stating, “I know what you’re doing,” “you are good with me,” “would [you] hook [me] up with some items,” and “I’ll get with you later about it.” They agreed to meet at the Post Exchange (PX) later that day, and when they did, the appellant selected, on Delonget’s recommendation, a laser disc player. With the appellant observing from a distance, Delonget placed security tape on the component and walked out of the PX. The appellant paid Delonget a fraction of the retail price for the equipment. In addition to the laser disc player, Delonget delivered to the appellant during the course of their conspiracy the following stolen equipment: an equalizer, receiver, amplifier, computer, and telephone.
Prior to their detention by military police investigators (MPI) on 30 January 1995, De-longet and Rideout suspected that the military police authorities were investigating their illegal activities. During their detention, both men implicated two noncommis-sioned officers in appellant’s unit, Sergeants Smith and Shepard, in the larceny scheme. That same day, MPI recovered stolen *931 AAFES pi-operty from the possession of all four soldiers. In an oral statement rendered after the seizures, Delonget implicated the appellant in the thefts.
On 31 January 1995, MPI looked for the appellant at his unit’s Preparation for Overseas Movement (POM), but the appellant was not there. Witnesses at trial placed the appellant at the POM that morning, talking to Sergeants Smith and Shepard. He then left the POM and was absent for one to two hours. That evening, pursuant to a search warrant issued by a military magistrate, MPI searched the appellant’s quarters. Although none of the stolen merchandise was found, the search revealed circumstantial evidence that stereo equipment and a computer had been hastily removed. Additionally, investigators found hashish in plain view and discovered remote control devices that were compatible with the stolen stereo equipment.
On the same day as the search of appellant’s quarters, Delonget rendered a lengthy sworn, written statement admitting his own central involvement in the larceny seam. Delonget explained how the appellant became a part of the conspiracy and received various items of stolen AAFES property. The next day, 1 February 1995, Delonget made another sworn, written statement in which he further detailed certain aspects of the appellant’s involvement.
II. PRIOR CONSISTENT STATEMENT
a. Background
Delonget testified as a key government witness against the appellant at trial and revealed on direct examination the details of the seam, including the appellant’s involvement. On cross-examination, the defense launched an effective broadside attack on Delonget’s credibility and character for truthfulness. The defense secured Delon-get’s admission that while testifying under a grant of immunity during the Article 32, UCMJ, investigation, he lied under oath when he denied stealing property unrelated to the larcenies at issue. Delonget also admitted to having testified during the Article 32, UCMJ, hearing that, “If lying will help my wife, my child, or myself, I’ll lie.”
The defense then elicited from Delonget that he was testifying at trial under a grant of immunity as part of a pretrial agreement in his own case. Under the conditions of the agreement, Delonget agreed to testify truthfully against the appellant, in exchange for the convening authority’s agreement to limit Delonget’s confinement to twenty-seven months. Delonget further revealed under cross-examination that because he was sentenced to seventy-two months of confinement, he stood to lose a considerable benefit under the pretrial agreement should he testify falsely at trial.
During the extensive and aggressive cross-examination of Delonget, the defense hammered away at the fact that Delonget had a deal which limited the adjudged sentence of seventy-two months of confinement to only twenty-seven months in jail. When the defense revisited these issues toward the conclusion of cross-examination, the trial counsel objected, presumably because of the cumulative nature of the evidence. The defense counsel countered that Delonget’s “motive” in securing benefits under the deal and avoiding prosecution for perjury justified the repeated probing.
On redirect examination, Delonget testified that he first made a statement incriminating the appellant on 30 January 1995, followed by written statements on 31 January and 1 February 1995, and that all of those statements were true. He further testified that his pretrial agreement was executed in April 1995, three months after making the statements in which he incriminated himself and appellant. The trial counsel then offered Delonget’s two written pretrial statements into evidence as prior consistent statements under Military Rule of Evidence 801(d)(1)(B) [hereinafter Mil.R.Evid.], to rehabilitate his witness from the defense assertion of recent fabrication and improper motive or influence.
The defense vigorously objected to the admissibility of the statements, arguing that they were made after Delonget’s motive to fabricate arose. The defense asserted that, to be admissible under Mil.R.Evid. 801(d)(1)(B), a prior consistent statement must be made before the motive to fabricate is formed. Because Delonget suspected the *932 authorities were investigating his misconduct prior to his detention, the defense counsel argued, Delonget had a motive during interrogation to fabricate by spreading the blame to others. The trial counsel countered that both statements were made before Delon-get’s pretrial agreement was negotiated and were offered to rebut the defense attack that Delonget’s motive to lie was to secure significant benefits under his pretrial agreement.
The military judge found that the defense tried to show that “the benefit of the pretrial agreement was the principle reason for Private Delonget’s (allegedly fabricated) testimony, and as such, provided the improper motive or improper influence” to fabricate. Although the military judge found that both proffered statements predated the improper influence or motive to lie, he only admitted Delonget’s first written statement into evidence. In explaining his different rulings on the two proffered statements, the military judge reasoned that the second statement lacked adequate indicia of reliability because it focused on the appellant’s misdeeds, whereas the first statement was reliable because it included substantial admissions against Delonget’s penal interests.
b. Analysis
Under Mil.R.Evid. 801(d)(1)(B), a prior consistent statement of a witness is not hearsay when offered to rebut an express or implied charge of recent fabrication or improper influence or motive. Because such a statement is defined as nonhearsay under the rule, if it is otherwise admissible, it comes into evidence on the merits, as well as to rehabilitate a witness’ credibility. United States v. McCaskey, 30 M.J. 188, 191 (C.M.A.1990). To qualify as admissible nonhearsay under the rule, the statement must predate the alleged recent fabrication or the improper influence or motive. Tome v. United States, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995); McCaskey, 30 M.J. at 192; United States v. Knox, 46 M.J. 688 (N.M.Ct.Crim.App.1997). When the evidence raises more than one improper motive or influence, to be admissible, the “statement need not precede all such motives or inferences (sic); but only the one it is offered to rebut.” United States v. Allison, — M.J. — (1998); United States v. Morgan, 31 M.J. 43 (C.M.A.1990). Thus, the military judge must determine when the motive to fabricate occurred and whether the offered statement rebuts the recent fabrication or improper influence. United States v. Toro, 37 M.J. 313, 315 (C.M.A.1993). Even if the statement qualifies as a prior consistent statement, the military judge should apply the balancing test under Mil.R.Evid. 403. Id. Bearing in mind that “a trial judge has considerable discretion in determining the trustworthiness of a statement,” our standard of review on the admissibility of a prior consistent statement is whether the military judge abused his discretion. United States v. Powell, 22 M.J. 141, 145 (C.M.A.1986).
The only evidence elicited by the defense regarding Delonget’s motive to fabricate was his alleged desire to reap the benefits of his pretrial agreement. The pretrial agreement was negotiated after Delonget made the statement at issue. Thus, the asserted motive to fabricate — as framed by the defense evidence and summarized by the military judge in his ruling — arose after Delonget made the prior consistent statement. The inescapable conclusion is that the prior statement logically rebuts the obvious and unrelenting defense attack that Delonget fabricated in order to reap significant benefits under his pretrial agreement.
Significantly, the defense presented no direct evidence at trial that supports the appellant’s theory on appeal that Delonget had a motive to fabricate at the time he was apprehended. The appellant’s argument is based on speculation that Delonget had a motive as soon as he was apprehended to concoct a false statement implicating the appellant. To accept the appellant’s argument, we would have to presume that all statements made by suspects after apprehension are tainted by a motive to fabricate or an improper influence to spread blame. Such a presumption, according to the appellant’s position, would lead to the blanket disqualification under Mil.R.Evid. 801(d)(1)(B) of all statements rendered by suspects after apprehension. Not only are we unwilling to create such a presumption of “instant motive” to fabricate, we believe it would be inconsistent *933 with the purpose of the Mil.R.Evid. 801(d)(1)(B) and case law.
The purpose of Mil.R.Evid. 801(d)(1)(B) is to permit a party to rebut a charge of recent fabrication by (or improper influence on) the party’s witness by admitting evidence that the witness has made a consistent statement before the motive or improper influence arose. McCaskey, 30 M.J. at 192. The rule allows the rehabilitation of a witness by logically relevant rebuttal statements made out of court. Toro, 37 M.J. at 315. Such credibility checks are useful as the fact finders seek the truth. The problem, of course, is that under Mil. R.Evid. 801(d)(1)(B), prior consistent statements are admissible not only on the issue of credibility, but also for the truth of the matter on the merits.
Admitting prior consistent statements as substantive evidence has been justified on at least two grounds: first, instructions limiting such evidence to the issue of the witness’ credibility are confusing and often ignored by juries; and, second, the rule provides inherent safeguards. McCaskey, 30 M.J. at 191. The rule’s predicate safeguards are that the declarant must testify at trial and be subject to cross-examination; the statement must be consistent with the declarant’s in-eourt testimony; and, the statement must be offered to actually rebut an attack of recent fabrication or improper motive or influence. Military judges are responsible for guarding against the importation of otherwise inadmissible hearsay statements into evidence under the guise of prior consistent statements, when a charge of recent fabrication or improper influence is neither intended nor substantial. We share the confidence expressed by then Judge Cox that military judges know when statements are truly offered in rebuttal and when they are not. Id. at 194 (Cox, J., concurring).
We are also confident that military judges will exercise sound discretion when faced with assertions, as in this ease, that more than one motive to fabricate or improper influence has been raised by the evidence. As we have noted, the appellant relies on speculation that Delonget had an instant motive to lie when he was detained. Although we reject this theory as unsupported by the evidence, we recognize the possibility that, in a particular case, more than one motive to fabricate might be established. When multiple improper motives or influences are raised, the military judge must find that the proffered statement predates the improper influence or motive for which it is offered to rebut. We are confident that military judges can carefully scrutinize the admissibility of such statements. The admissibility of all evidence, of course, is subject to the crucible of MiLR.Evid. 403, and the military judge’s discretion in applying those principles is particularly crucial when faced with issues involving prior consistent statements.
Based on the evidence of record and the analysis above, we hold that the military judge did not abuse his discretion in this case when he admitted the one prior consistent statement made well before the alleged motive to fabricate arose.
Finally, based on our reading of the record, we are certain that the members in this case carefully weighed all the evidence, and their findings confirm that they only convicted the appellant of offenses for which there was independent evidence corroborating Delonget’s testimony. The appellant was not convicted of any offense based solely on Delonget’s testimony. Because the members obviously viewed Delonget’s testimony with great caution, we are satisfied that the probative value of the prior consistent statement as substantive evidence was minimal. Therefore, even if the military judge erred in admitting the statement, we find no error materially prejudicial to the appellant’s substantial rights. Art. 59(a), UCMJ; McCaskey, 30 M.J. at 193.
III. REMOVAL OF PROPERTY TO PREVENT SEIZURE
The appellant asserts that the evidence is legally and factually insufficient to support his conviction for removal of property to prevent seizure. The elements of this offense are as follows:
(1) That one or more persons authorized to make searches and seizures were seiz *934 ing, about to seize, or endeavoring to seize certain property;
(2) That the accused destroyed, removed, or otherwise disposed of that property with intent to prevent the seizure thereof;
(3) That the accused then knew that person(s) authorized to make searches were seizing, about to seize, or endeavoring to seize the property; and
(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
Manual For Courts-Martial, United States (1995 ed.), Part IV, para. 103 [hereinafter MCM, 1995].
The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the government, the trier of fact could rationally find the existence of each and every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); United States v. Blocker, 32 M.J. 281, 284 (C.M.A.1991). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is itself convinced of the appellant’s guilt beyond a reasonable doubt. United States v. Turner, 25 M.J. 324 (C.M.A.1987).
Although the evidence was legally sufficient to support the finding of guilty as to this offense, we are not convinced beyond a reasonable doubt that the appellant had knowledge that persons authorized to make searches were about to seize the property he apparently removed. This element requires proof that the appellant had actual knowledge of an imminent search of his quarters. See Gasho v. United States, 39 F.3d 1420 (9th Cir.1994). The government’s proof on this element is thin at best. The evidence reveals that the appellant talked to Sergeants Smith and Shepard at the POM, the day after they had been questioned and searched. The appellant thereafter left the POM. Without detailing the evidence, we are satisfied that it only showed circumstantially that stereo and computer equipment had been hastily removed from the appellant’s quarters prior to the search, which was conducted the evening of the POM. The search uncovered only remote control devices which were compatible with the stolen equipment. Neither Sergeant Smith nor Sergeant Shepard testified as to what they discussed with the appellant. No evidence suggests that Sergeants Smith and Shepard even knew a search was to be conducted of the appellant’s quarters, or that they knew that Delonget had implicated the appellant. Although we suspect the appellant was probably concerned that a search might be made of his apartment, we are unwilling, on the strength of this evidence, to conclude beyond a reasonable doubt that the appellant knew that the authorities were about to conduct a search. Accordingly, we will set aside the findings of guilty on this charge and specification.
Having carefully considered the appellant’s assigned error concerning the challenge for cause against Lieutenant Colonel James, we find no error. United States v. Lavender, 46 M.J. 485 (1997); United States v. Napoleon, 46 M.J. 279 (1997). We have also considered the matters raised personally by the appellant pursuant to Grostefon, and find them to be without merit.
The findings of guilty of Charge V and its Specification and Specification 1 of Charge VI are set aside and Charge V and its Specification and Specification 1 of Charge VI are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted, the entire record, and United States v. Sales, 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for forfeiture of all pay and allowances, reduction to El, confinement for seven years, and discharge from the service with a bad-conduct discharge.
Judge ECKER and Judge TRANT concur.