COMMONWEALTH vs. RICHARD NICHOLS.

No. 93-P-772.

Worcester. May 9, 1994. - September 27, 1994.

Present: KASS, FINE, & GREENBERG, JJ.

*Evidence*, Impeachment of credibility, Collateral matter, Cross-examination. *Witness*, Credibility, Impeachment, Bias. *Constitutional Law*, Confrontation of witnesses.

At the trial of indictments charging sexual molestation of a child in which credibility was the issue, the judge erred in excluding evidence of the alleged victim's admitted and independently documented false accusation of sexual molestation, made about another person subsequent to her complaints against the defendant. [335-338]

INDICTMENTS found and returned in the Superior Court Department on July 16, 1992.

The cases were tried before *Elizabeth Butler*, J.

*Carlo Obligato*, Committee for Public Counsel Services, for the defendant.

*Phillip E. Shea*, Assistant District Attorney, for the Commonwealth.

KASS, J. Richard Nichols was convicted by a jury on ten indictments charging sexual molestation of a child and one indictment of assault and battery. In his appeal, Nichols argues principally that the trial judge erroneously denied his request to cross-examine the victim witness about false allegations of sexual molestation she had made against an uncle subsequent to the complaints against the defendant. The complaints against the uncle were retracted two days after they had been made. We think the circumstances of the false complaint were such as to invoke the limited exception announced in *Commonwealth* v. *Bohannon*, 376 Mass. 90 (1978), to the general rule of exclusion of prior false allegations. See *Miller* v. *Curtis*, 158 Mass. 127 (1893). We need

not consider a secondary argument concerning a portion of the prosecutor's closing argument, to which, incidentally, the defense did not object at trial.

All the charges against Nichols were made by his stepdaughter, Lynn,[1] who alleged various acts of sexual abuse perpetrated by Nichols while she was between ages eleven and fifteen. Among other things, Lynn testified, Nichols had touched her breasts and genitalia and had her perform fellatio upon him. During the time when the offenses were said to have occurred, Lynn lived with Nichols, her mother (Debra Nichols), and two other children. Debra and Nichols were, in Lynn's opinion, too strict — Lynn was required to do chores, adhere to a curfew, and was not allowed to wear makeup or to cut or "perm" her hair. Her parents (she regarded Nichols as her father) disciplined her by grounding her, denying her privileges, and hitting her. Lynn expressed a desire to live with her aunt and uncle, Richard and Lisa Openshaw (the latter is Nichols's sister), but Debra did not allow that.

Lynn did not speak of sexual abuse by Nichols until after she had been in a violent argument with her parents early in November, 1991. Lynn told Lisa Openshaw that the quarrel had occurred after Debra had observed her engaging in sexual misconduct with a boy in the family's backyard. Lynn had allowed the boy to touch her "in the wrong places." During the argument, Debra gave Lynn the back of her hand in the eye. Lynn thereupon, so Debra testified, vowed to "get even" with Debra and Nichols. Lynn subsequently told a friend that Nichols had been molesting her and that he had hit her (during a different argument). On November 10, 1991, Lynn called Lisa Openshaw and told her that Nichols had been molesting her. On November 13, 1991, Lynn spoke to a social worker employed by the Department of Social Services (DSS) about being hit and Nichols having molested her.

One week after making those allegations, Lynn was removed from her home by DSS and placed with the Open-

---

[1]A fictitious name.

shaws, where she enjoyed greater freedom, at least until the summer of 1992, when the Openshaws became more strict with her. They were concerned about her hanging around with teenagers whom they did not consider suitable companions. In September, 1992, Lynn complained to DSS that her uncle, Richard Openshaw, had been playing "sexual games" with her. The details of Lynn's complaint, which appeared in a DSS report available to the defense[2] and the judge, were that Openshaw would watch her take showers, told her she had a nice body, got into the shower with her and washed her back, buttocks, and hair, slapped her buttocks as she walked past him, tried to pull her towel off when she got out of the shower, and had asked her opinion whether a centerfold picture in a Playboy magazine didn't look like her.

Those allegations Lynn recanted in a matter of days, at the same time that she expressed a wish to return to the Openshaws from a foster home in which DSS had placed her on receiving the sexual abuse complaint against Richard Openshaw. Lynn told social workers she had lied but did not know why, suggesting the charges against Openshaw were flashbacks of what she had experienced with Nichols or that she had dreamed it because she was testifying against Nichols. DSS determined that her complaint of sexual abuse against Openshaw was unsupported.

Nichols's lawyer moved before trial for an order allowing her to question Lynn about the allegations she had made against her uncle and her subsequent retraction. Defense counsel's offer of proof was that the responses would illuminate Lynn's motives and proclivity for mendacity when she felt put upon or kept on what she thought was an unfairly tight leash. To counsel's arguments that the inquiry was matter of right under the Fifth and Sixth amendments to the United States Constitution and under *Bohannon*, the judge responded that the *Bohannon* exception was not applicable because the claimed false allegation was made *after*, not *before*, the acts for which the defendant was on trial. The

---

[2]In response to a *Stockhammer* motion. See *Commonwealth* v. *Stockhammer*, 409 Mass. 867 (1991).

judge also expressed her view that Lynn's false allegations against Openshaw might be attributable to posttraumatic stress syndrome or some sort of flashback. Counsel had also argued, though less explicitly, that the evidence of the false allegations should be received because they tended to prove the bias of the complaining witness, i.e., she was moved to fabricate claims of sexual molestation to achieve her purpose of extricating herself from the household in which she felt constrained.

Following the opinion in *Commonwealth v. Bohannon*, 376 Mass. 90 (1978), there has been a long line of decisions explaining why, in the circumstances of each, the *Bohannon* rule was not applicable. For a sampling, see *Commonwealth v. Sperrazza*, 379 Mass. 166, 169 (1979); *Commonwealth v. McDonough*, 400 Mass. 639, 650-651 (1987); *Commonwealth v. Lavelle*, 414 Mass. 146, 151-152 (1993); *Commonwealth v. Hrycenko*, 417 Mass. 309, 318-319 (1994); *Commonwealth v. Blair*, 21 Mass. App. Ct. 625, 627-629 (1986); *Commonwealth v. Hicks*, 23 Mass. App. Ct. 487 (1987); *Commonwealth v. Rathburn*, 26 Mass. App. Ct. 699, 709-711 (1988). Most often, a proffer under the *Bohannon* exception failed because of the absence of evidence from an independent source that the collateral allegation was false.

In the instant case, the independent evidence of the falsity of the collateral allegation is clear, even stark. The complaining party has admitted making false allegations, and the evidence is available from the DSS records. To that degree, there is a solid basis for cross-examining the complaining witness about her false allegation against the uncle. As in *Bohannon*, the witness concerned was the victim at trial.

Unlike *Bohannon*, the collateral false allegation was not a prior one but a subsequent one, as the trial judge emphasized. We do not think sequence is critical. It is surely important that the collateral allegation be proximate in time to the primary accusation against the defendant, but the collateral allegation has no less bearing on the credibility of the accusing witness if made after the primary allegation. See *People v. Nicholl*, 210 Ill. App. 3d 1001, 1010-1011 (1991). Indeed,

a lie subsequent to the primary event, if closer in time, may be more probative of a proclivity to lie and fabricate than a prior false allegation.

As to the judge's reflections that the second and false allegation may have been the consequence of posttraumatic stress syndrome or flashback, the difficulty is that the judge's thoughts assume the very proposition to be tested, the credibility of the complaining witness. To that we may add that there was no evidence that the victim witness suffered from posttraumatic stress syndrome. The possibility that Lynn might be affected with that syndrome was an idea introduced by the judge and, however astute a theory, did not provide a basis for a ruling. The flashback theory (alluded to by the witness when she recanted) is also doubtful because, while the second allegation is generically similar, i.e., it deals with sexual molestation, the details are different. The allegations against Nichols included touching of breasts and vagina, having her commit fellatio, and an attempt at intercourse; the allegations against Openshaw involved touching of buttocks, ogling, and suggestive remarks and body contact. A common charateristic of each set of allegations is that the man showed her a picture from Playboy and made suggestive remarks. Thus, there is an over-all similarity of subject and as to a particular detail, but if there was a flashback it had been subjected to severe editing.

It is well understood that evidence of prior bad acts of a victim witness, such as sexual conduct that violates community standards, will not be received because that would unfairly place the witness on trial. So it is that G. L. c. 233, § 21B, the rape-shield statute, bars evidence of specific instances (subject to precisely described exceptions) of the sexual conduct of an alleged rape victim. The essence of the *Bohannon* exception is that the evidence deals not with sexual conduct but false allegation. False allegations do not attack the witness for lifestyle but for an ability, readiness, or proclivity to lie and fabricate. That is, such evidence bears on the credibility of the witness, a subject that may be properly tested in any trial. The *Bohannon* exception is applicable in

"unusual fact situations where justice demands." *Commonwealth* v. *McDonough*, 400 Mass. at 650. *Commonwealth* v. *Trenholm*, 14 Mass. App. Ct. 1038, 1039 (1982).

This is such an unusual situation. Lynn was the key witness. The trial was fundamentally a contest of credibility between what she said happened and what the defendant said had not happened. Lynn had sworn revenge against the defendant and her mother because she had been sharply disciplined. Relatively close in time to the complaint against Nichols (ten months later), while living with her aunt and uncle, she leveled charges of sexual molestation following discipline — then said they were false. That the charges are made on the heels of abrasive argument is probative of fabrication. See the extensive discussion in *Commonwealth* v. *Wall*, 413 Pa. Super. 599, 616-625 (1992). We are of opinion that the jury were entitled to hear and weigh the evidence of the allegations against Openshaw. We do not understand the list of the *Bohannon* circumstances made in *Commonwealth* v. *Sperrazza*, 379 Mass. at 169, to require that every aspect of *Bohannon* must be present before the *Bohannon* exception may be applied. So, for example, in the instant case consent to the sexual conduct is not an issue, and, although one may poke holes in the consistency of Lynn's testimony, it does not seem as notably inconsistent as that of the victim witness in *Bohannon*. But the circumstances are such as to cause the evidence of the collateral allegation — obtained from an independent source — to be exceptionally probative so far as the credibility of the victim witness is concerned.

It may also be that an alternative ground for allowing cross-examination based on the false allegation is that the defendant may do so for the purpose of showing bias of the witness. *Commonwealth* v. *Ahearn*, 370 Mass. 283, 287 (1976). *Davis* v. *Alaska*, 415 U.S. 308, 318 (1974). That is, the defendant had a right under the confrontation clause of the Sixth Amendment to the United States Constitution to present to the jury evidence to support his theory that Lynn was a wilful adolescent prepared to manipulate those who

had custody of her and controlled her activities, *United States* v. *Stamper*, 766 F. Supp. 1396, 1401-1402 (W.D.N.C. 1991), affd., 959 F.2d 231 (4th Cir. 1992), and that her testimony was tinged with bias.

The defendant is entitled to a trial at which defense counsel may cross-examine the victim witness about her subsequent false allegation.

*Judgments reversed.*

*Verdicts set aside.*