490 S.E.2d 34

**STATE of West Virginia, Plaintiff Below, Appellee**

**v.**

**James QUINN, Defendant Below, Appellant.**

**No. 23537.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 25, 1997.

Decided June 4, 1997.

Dissenting Opinion of Justice Maynard June 5, 1997.

Rehearing Denied July 15, 1997.

Concurring Opinion of Chief Justice Workman July 22, 1997.

David R. Bungard, Robinson and McElwee, Charleston, David L. Jackson, Chase and Gardner, Moundsville, for Appellant.

Scott E. Johnson, Senior Assistant Attorney General, State of West Virginia, Charleston, for Appellee.

STARCHER, Justice:

This case involves an appeal by James Quinn ("the appellant") of his conviction in the Circuit Court of Wetzel County for the offense of sexual misconduct toward a child by a custodian.

At the appellant's trial, the presiding judge ruled that our rape shield law prohibited the admission of evidence that the child victim had made other statements about sexual misconduct against her by other persons. We uphold the trial judge's ruling because the appellant did not show that the child's other statements were false, and the evidence regarding the statements was not admissible pursuant to the provisions of our rape shield law.

The trial judge also allowed two witnesses to testify about statements made by the child victim to the witnesses, describing the appellant's sexual misconduct. We also uphold this ruling by the trial judge, because the child's prior consistent statements rebutted

the appellant's charge that the child had fabricated her testimony.

Finding no reversible error in the appellant's trial, we affirm the judgment of conviction.

## I.

### Facts and Discussion

The appellant James Quinn was convicted in 1994 in the Circuit Court of Wetzel County of violating *W.Va.Code*, 61–8D–5(a) [1991], which creates the criminal offense of sexual misconduct toward a child by a parent, custodian, or guardian.[1] The child in question we shall call T.M. to protect her identity, as is our customary practice in sensitive cases.

In November of 1992, T.M. was five years old and lived with her mother and several siblings in Wetzel County. The appellant is the father of one of T.M.'s siblings and a close neighbor of T.M.'s mother. The appellant was a frequent babysitter for T.M. and her siblings. The appellant was also a regular attender at drunken parties at T.M.'s home—parties that often ended in T.M.'s mother having sex with one of her numerous male friends.

On November 18, 1992, T.M. told her mother's sister, Connie Morgan, that the appellant had sexually molested T.M. several weeks earlier when the appellant was babysitting for T.M. and her siblings. On the next day, November 19, 1992, T.M. repeated her allegations about the appellant's conduct to a social worker, Michelle Hall.

After the appellant was arrested and charged with sexual misconduct, T.M. began seeing a therapist. In the course of the therapy, T.M. made a number of statements which were recorded in therapy notes to the effect that T.M. had been the victim of sexual misconduct by several other persons, including a sibling and a grandparent.[2]

The questions which we address in this appeal are (1) whether our rape shield law barred the jury at appellant's trial from learning of T.M.'s statements about other persons allegedly molesting T.M.; and (2) whether the prior consistent statement rule permitted the jury to hear testimony about T.M.'s statements implicating the appellant that T.M. made to her aunt and to a social worker. We answer both questions in the affirmative.

### A.

### Standard of Review

■ There are two interrelated standards that apply in this case. First, an interpretation of the *West Virginia Rules of Evidence* presents a question of law subject to *de novo* review. Second, a trial court's ruling on the admissibility of testimony is reviewed for an abuse of discretion, but to the extent the circuit court's ruling turns on an interpretation of a *West Virginia Rules of Evidence*, our review is plenary. *State v. Sutphin*, 195 W.Va. 551, 560, 466 S.E.2d 402, 411(1995).

### B.

### Rape Shield Law

■ At his trial, the appellant was prohibited from asking T.M. on cross-examination

---

1. *W.Va.Code*, 61–8D–5(a) [1991] states:

   (a) In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such guardian or custo-

dian shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than five nor more than fifteen years, or fined not less than five hundred nor more than five thousand dollars and imprisoned in the penitentiary not less than five years nor more than fifteen years.

2. T.M. also made a similar statement to a foster parent. Additionally, the appellant contended (but did not vouch the record with evidence) that T.M. had made similar statements to other family members. The most reliable evidence of T.M.'s statements about being the victim of sexual misconduct by persons other than the appellant were T.M.'s statements which were recorded in therapy notes.

about her statements that she had been the victim of sexual misconduct by persons other than the appellant. The appellant also was prohibited from putting on testimony before the jury from third persons to the effect that T.M. had made such statements, and that the statements were false.

The trial court's rationale for prohibiting the appellant's proffered questioning and evidence was West Virginia's rape shield law, which is expressed in *W.Va.Code,* 61–8B–11 [1986] [3] and in *West Virginia Rules of Evidence* 404(a)(3) [1994].[4] In this opinion we shall refer to both the statute and the rule, considered *in pari materia,* as West Virginia's "rape shield law."

The appellant contends that our rape shield law does not apply to T.M.'s statements. The appellant contends that T.M.'s statements were *false,* and therefore were not evidence of T.M.'s sexual conduct. The

appellant argues that T.M.'s false statements are evidence that T.M. has lied about others in the same fashion that the appellant says that T.M. has lied about him.

The issue that we address in this appeal, concerning when and how our rape shield law applies to other statements by an alleged victim of a sexual offense that he or she has been the victim of sexual misconduct, is apparently one of first impression for this Court.

However, many other jurisdictions have considered the question of how a trial court should respond when a defendant on trial for a sexual offense wishes to try to show that the alleged victim has made other statements that are false to the effect that he or she has been the victim of sexual misconduct.[5] *See generally* cases collected in Johnson, Denise R., *Prior False Allegations of Rape: Falsus in Uno, Falsus in Omnibus?,* 7 Yale J.L. &

3.  *W.Va.Code,* 61–8B–11 [1986] states:

    (a) In any prosecution under this article in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible. In any other prosecution under this article, evidence of specific instances of the victim's prior sexual conduct with the defendant shall be admissible on the issue of consent: Provided, That such evidence heard first out of the presence of the jury is found by the judge to be relevant.

    (b) In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, That such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto.

    (c) In any prosecution under this article, neither age nor mental capacity of the victim shall preclude the victim from testifying.

    (d) At any stage of the proceedings, in any prosecution under this article, the court may permit a child who is eleven years old or less to use anatomically correct dolls, mannequins or drawings to assist such child in testifying.

4.  *West Virginia Rules of Evidence* 404(a) [1994] states in pertinent part:

    (a) *Character evidence generally.* Evidence of a person's character or a trait of character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except: ...

    (3) Character of victim of a sexual offense.— In a case charging criminal sexual misconduct, evidence of the victim's past sexual conduct with the defendant as provided for in W.Va. Code § 61–8B–11; and as to the victim's prior sexual conduct with persons other than the defendant, where the court determines at a hearing out of the presence of the jury that such evidence is specifically related to the act or acts for which the defendant is charged and is necessary to prevent manifest injustice.

5.  The evidence that a defendant wishes to use to make this showing has been called "prior false accusation" or "prior false allegation" evidence. *Cf.* Johnson, *Prior False Allegations, infra.* However, this terminology may be misleading. As the instant case shows, the statements at issue need not have been made prior to the alleged victim's statements implicating the defendant. T.M. made many of her statements about other sexual misconduct more than a year after she made a charge against the appellant. Additionally, the statements in question may not be what would ordinarily be called "accusations" or even "allegations." T.M. made many of her statements to a therapist in a non-accusatory situation. Moreover, the falsity of the other statements is also often a matter of dispute. Finally, the term "prior false accusation/allegation" may imply that the present allegation or accusation is also false. In an attempt to be more accurate, this opinion will use the term "other statements" for such evidence.

Feminism 243 (1995). *See also* note 7 *infra* and text at *infra* note 8.

In West Virginia, evidence about such other statements must be considered by the trial court in light of (1) our rape shield law, and (2) other applicable evidentiary rules and principles. We confine our discussion in this opinion to the applicability and effect of our rape shield law—because the rape shield law was the basis of the trial court's ruling in the instant case, and because our determination on this issue is dispositive of the assignment of error presented by the appellant.

■ However, we caution that a determination of the applicability and effect of our rape shield law to a proffer of such "other statements" evidence is not the same thing as a determination of the evidence's admissibility. When evidence is outside of the scope [6] of our rape shield law, the evidence is nevertheless subject to all other applicable rules and considerations for the admissibility of evidence. *See* discussion *infra* at note 9. *Cf. Hughes v. Raines*, 641 F.2d 790, 793 (9th Cir.1981) (where a rape shield law was not an issue, the rules of evidence and the Confrontation Clause did not require that a complaining witness in a rape case be cross-examined about a rape accusation she made in an unrelated case).

Initially, we conclude that to the extent that T.M.'s "other statements" in question were true, the statements were evidence of T.M.'s sexual conduct, although involuntary in nature. Our rape shield law states that it applies without limitation to evidence of a victim's "sexual conduct." *W.Va.Code*, 61–8B–11 [1986]; *West Virginia Rules of Evidence* 404(a)(3) [1994]. Therefore, our rape

shield law applied to T.M.'s statements to the extent that the statements were true.[7]

The question then arises, how to properly determine whether T.M.'s statements were true and therefore whether our rape shield law applied to the statements?

Most if not all jurisdictions which have considered the applicability of rape shield laws to "other statements" evidence have answered this question by concluding that rape shield laws apply to such evidence unless the defendant makes a threshold showing to the trial judge outside the presence of the jury based on substantial proof that the other statements made by the alleged victim are false.

"The importance of proof of the prior allegation's falsity has been enunciated in numerous state cases. . . ." *United States v. Stamper*, 766 F.Supp. 1396, 1403 n. 3 (W.D.N.C.1991) (citations omitted), aff'd. 959 F.2d 231 (4th Cir.1992). For cases illustrating this point, *see Stamper*, 766 F.Supp. at 1399 n. 2, 1403 n. 3; *State v. Boggs*, 63 Ohio St.3d 418, 423, 588 N.E.2d 813, 817–18 (1992). *See also* cases cited in Johnson, *supra* at 247 n. 16.[8]

That the jurisdictions which have considered this issue are somewhat uniform in reaching this conclusion is not a surprise, since it is compelled by a logical interpretation and application of the rape shield laws that are now commonplace. As we have observed, statements about sexual activity involving an alleged victim which are not false are evidence of the alleged victim's sexual conduct, even though such conduct

---

**6.** In saying that certain evidence is or is not within the "scope" or purview of our rape shield law, *W.Va.Code*, 61–8B–11 [1986] and *West Virginia Rules of Evidence* 404(a)(3) [1994], we mean that our rape shield law does or does not apply to such evidence. Said another way, if evidence is within the scope of our rape shield law, then the court's consideration of the admissibility of such evidence must be governed in part by the provisions of our rape shield law. If evidence is not within the scope of our rape shield law, then the court need not apply the provisions of our rape shield law in considering the admissibility of the evidence.

**7.** *W.Va.Code*, 61–8B–11 [1986] and *West Virginia Rules of Evidence* 404(a)(3) [1994] do not qualify or limit their application only to evidence of "consensual" sexual conduct by an alleged victim. *See State v. Montoya*, 91 N.M. 752, 753, 580 P.2d 973, 974, *cert. denied* 91 N.M. 751, 580 P.2d 972 (1978); *Little v. State*, 413 N.E.2d 639, 643 (Ind.Ct.App.1980).

**8.** An academic commentator has stated that "courts uniformly require that there be a strong factual basis for concluding that the prior accusation was false." Galvin, Harriet R., *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 Minn. L. Review 763, 861 (1986).

was involuntary—and such evidence is *per se* within the ordinary scope of rape shield laws.

It is necessary for a judge to make an initial determination of falsity *vel non* outside of the presence of the jury, because permitting a jury to make an initial consideration of the other statements' truth or falsity would contradict the purpose of rape shield laws—which is to prohibit a jury from considering evidence about an alleged victim's sexual conduct, unless a judge first determines that such evidence is manifestly necessary to achieve a fair trial. *See West Virginia Rules of Evidence* 404(a)(3) [1994], *supra* note 4.

There are various formulations of a defendant's burden in showing that there is substantial proof that the alleged victim's other statements are false and may be considered outside of the scope of a rape shield law. These formulations include: "demonstrably false," *Little v. State*, 413 N.E.2d at 643; "reasonable probability of falsity," *Clinebell v. Commonwealth*, 235 Va. 319, 325, 368 S.E.2d 263, 266 (1988); and "supportable contention," *People v. Sheperd*, 37 Colo.Ct. App. 336, 338, 551 P.2d 210, 212 (1976).

■ We conclude that evidence that the alleged victim of a sexual offense has made statements about being the victim of sexual misconduct, other than the statements that the alleged victim has made about the defendant and that are at issue in the state's case against the defendant, is evidence of the alleged victim's "sexual conduct" and is within the scope of West Virginia's rape shield law, *W.Va.Code*, 61–8B–11 [1986] and *West Virginia Rules of Evidence* 404(a)(3) [1994], unless the defendant establishes to the satisfaction of the trial judge outside of the presence of the jury that there is a strong probability that the alleged victim's other statements are false.

■ Like many other jurisdictions which have faced this issue, we believe that requiring strong and substantial proof of the actual falsity of an alleged victim's other statements is necessary to reasonably minimize the possibility that evidence which is within the scope of our rape shield law, *W.Va.Code*, 61–8B–11 [1986] and *West Virginia Rules of*

*Evidence* 404(a)(3) [1994], is not erroneously considered outside of its scope.

■ A defendant who wishes to cross-examine an alleged victim of a sexual offense about or otherwise introduce evidence about other statements that the alleged victim has made about being the victim of sexual misconduct must initially present evidence regarding the statements to the court out of the presence of the jury and with fair notice to the prosecution, which presentation may in the court's discretion be limited to proffer, affidavit, or other method that properly protects both the rights of the defendant and the alleged victim and effectuates the purpose of our rape shield law, *W.Va.Code*, 61–8B–11 [1986] and *West Virginia Rules of Evidence* 404(a)(3) [1994].

■ If the trial court finds that there is a strong probability that the alleged victim of a sexual offense has made other statements which are false about being the victim of sexual misconduct, evidence relating to those statements may be considered by the court outside of the scope of our rape shield law, *W.Va.Code*, 61–8B–11 [1986] and *West Virginia Rules of Evidence* 404(a)(3) [1994].

■ A determination of the probable falsity of other statements of being the victim of sexual misconduct made by an alleged victim of a sexual offense is not a determination of the admissibility of evidence regarding the statements, nor is it a determination that cross-examination on the other statements must be permitted. A falsity determination means only that evidence regarding the other statements is not to be considered as evidence of an alleged victim's "sexual conduct" within the meaning of our rape shield law, *W.Va.Code*, 61–8B–11 [1986] and *West Virginia Rules of Evidence* 404(a)(3) [1994]. The evidence remains subject to all other applicable evidentiary requirements and considerations.[9] Moreover, in the event that an ultimate determination is made that such evidence is admissible, the state retains the right to seek to rebut or impeach such evidence before the ultimate trier of fact.

---

**9.** *See generally State v. Wood*, 194 W.Va. 525, 460 S.E.2d 771 (1995).

■ Applying this standard to the proceedings in the appellant's case, we conclude that the appellant's proffer to the trial court fell far short of showing a strong probability that T.M.'s statements were false.

To attempt to show the falsity of T.M.'s statements, the appellant sought to have some of the alleged "other perpetrators" of sexual misconduct against T.M. take the stand and deny the misconduct that T.M. described in her other statements. The appellant's counsel stated to the trial judge: "I just want to bring the people in that she's accused and ... let them admit or deny on the record whether they did this stuff." To this proffer the trial judge replied, "Well, that wouldn't be enough." [10]

The circuit court's ruling was in accord with the holdings of similar cases in other jurisdictions that have considered what sort of evidence or proffer is sufficient or necessary to show falsity. "Such [simple denial]

evidence to show falsity of other accusations is generally rejected," *Commonwealth v. Hicks,* 23 Mass.Ct.App. 487, 491, 503 N.E.2d 969, 973 (1987) (citations omitted). The circuit judge was correct in ruling that the denial evidence proffered by the appellant would not establish the requisite threshold of a strong showing of probable falsity. [11]

The appellant cites the case of *United States v. Stamper,* 766 F.Supp. 1396 (W.D.N.C.1991), *aff'd* 959 F.2d 231 (4th Cir. 1992), where a conviction was reversed because the trial court did not allow cross-examination or other evidence about other statements made by the alleged victim to the effect that she had been the victim of sexual misconduct. However, in *Stamper* the alleged victim had previously admitted the falsity of her prior statements. 766 F.Supp. at 1401. The court in *Stamper* emphasized that its ruling was premised on the "substantial

---

10. The appellant did vouch the record out of the presence of the jury by proffer and by testimony with evidence of what T.M. had said in her statements. After the court stated that denials by the persons who T.M. had said had sexual contact with her would not be enough to establish falsity, the appellant did not vouch the record with the denial testimony. However, several family members did testify before the jury that T.M. generally did not tell the truth.

The trial court did prohibit the appellant from cross-examining T.M., out of the presence of the jury, about her statements. The trial judge ruled that he would deny such examination in light of T.M.'s age and vulnerability; but the judge did allow the appellant to make a proffer as to what T.M.'s testimony would be—to-wit, that she had made the statements in question.

The appellant no doubt hoped that cross-examination of T.M. might result in her admission that she had made false statements about the sexual misconduct of others. But the appellant did not point to any evidence showing that such an admission might be forthcoming, nor to a substantial impossibility, discrepancy or other defect in T.M.'s statements that provided a strong *indicium* of the statements' falsity.

It would be contrary to the purposes of the rape shield law to allow the appellant to conduct a "fishing expedition" cross-examination of a witness like T.M., absent a substantial prior showing that there was reason to believe that her statements were in fact false. We conclude that the appellant did not adduce or proffer sufficiently strong evidence of the other statements' falsity to require the trial court to allow T.M. to be cross-examined outside of the presence of the jury about her other statements.

11. Our conclusion that the trial judge did not err is reinforced by our review of the detailed notes in the record from T.M.'s therapists, and the testimony at trial about the miserable conditions in T.M.'s home. Based on this evidence, the trial judge stated that he thought that T.M.'s other statements could well have been true, and we agree with this assessment.

Moreover, the circuit judge's recognition of the significant possibility that T.M.'s other statements were in fact true was pointedly supported by the approach that the appellant himself took to T.M.'s other statements during pre-trial proceedings.

Initially, the appellant sought to use T.M.'s statements about being the victim of sexual misconduct by persons other than the appellant to explain how T.M. could have developed an "enlarged vaginal opening" (as indicated by a medical examination) through sexual activity with someone other than the appellant. That is, initially the appellant asked the trial court to admit T.M.'s other statements for their possible *truth*.

When the prosecution stated that it would not refer to T.M.'s enlarged vaginal opening at trial, apparently because a medical expert was uncertain that this evidence conclusively showed sexual activity, the appellant wanted to use T.M.'s other statements to show that T.M. was a liar, and had wrongfully accused others of sexual misconduct. That is, the appellant made an "about-face," and sought to admit T.M.'s statements for their *falsity*.

It would be difficult to contrive a better example of statements that were not demonstrably false, when the appellant at various times contended that the statements were admissible for both their possible truth and their falsity.

proof" of the falsity of the alleged victim's other statements. *Id.* at 1403 n. 3.

The appellant also cites us to *Clinebell v. Commonwealth*, 235 Va. 319, 368 S.E.2d 263 (1988) and *Smith v. State*, 259 Ga. 135, 377 S.E.2d 158 (1989), *cert. denied,* 493 U.S. 825, 110 S.Ct. 88, 107 L.Ed.2d 53 (1989), two cases which also held that a defendant should be allowed to introduce evidence regarding an alleged victim's other false statements. As in *Stamper,* the courts in these cases recognized the requirement of a strong threshold showing of the falsity of the alleged victim's other statements.[12]

Thus the cases that the appellant relies upon in contending that the trial judge in the instant case committed reversible error do not support the appellant's position, because the decisions in those cases were grounded on a sufficient threshold showing of the falsity of the statements in question. We have found that this threshold requirement was not met in the instant case.

For the foregoing reasons, we conclude that the trial judge did not abuse his discretion in concluding that the appellant's proffered evidence of T.M.'s other statements was within the scope of our rape shield law.

The appellant does not contend that the evidence regarding T.M.'s statements should have been admitted, if it was properly treated as evidence of T.M.'s sexual conduct and thus within the scope of our rape shield law.[13] Nor do we do perceive any grounds, under the facts of this case, that would require the admission of such evidence under our rape shield law.[14]

We conclude that the trial court did not err in relying on our rape shield law in refusing to allow the appellant's proposed cross-examination of T.M. and other proffered evidence regarding T.M.'s other statements that she had been the victim of sexual misconduct.

**12.** In Johnson, Denise R., *Prior False Allegations of Rape: Falsus in Uno, Falsus in Omnibus?,* 7 Yale J.L. & Feminism 243 (1995), Associate Justice Johnson of the Supreme Court of Vermont contends that the decisions in many cases, in unconscious perpetuation of rape stereotypes and mythology, erroneously assume or conclude that (once any rape shield law hurdle is cleared) evidence of other false statements of sexual misconduct is presumptively or automatically admissible and highly probative to impeach the testimony of the alleged victim of a sexual offense.

In this article, Associate Justice Johnson questions the propriety of any evidentiary rule that would find an alleged sex offense victim's other false statements regarding sexual misconduct to be any more or less admissible on the issue of a given defendant's guilt than, for example, an alleged robbery victim's other false statements regarding robbery. Her article challenges courts to not "blindly follow[ ] a substantial and confusing line of precedent . . ." and to view this issue like any other prior false statement of a witness. *Id.* at 276.

In *Clinebell* and *Smith,* each court appears to have concluded or assumed that, absent the effect of a rape shield statute, cross-examination and the admission of extrinsic evidence regarding other false statements by the alleged victim of a sexual offense is presumptively admissible and probative to impeach the alleged victim. Although the issue is not before us, we question whether such a conclusion or assumption is proper.

**13.** In *State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261 (1982), we held that in light of the judicially sanctioned procedures set out in *State*

*v. Green,* 163 W.Va. 681, 260 S.E.2d 257(1979) (which are essentially codified in *West Virginia Rules of Evidence* 404(a)(3) [1994] ), the provisions of West Virginia's rape shield law are constitutional under the provisions of the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution.*

The District of Columbia Court of Appeals stated in a case similar to the instant case: "[b]ecause the constitution does not require confrontation of witnesses with irrelevant evidence, the very applicability of the confrontation clause in this case depends upon [the alleged victim's] prior allegations [of sexual misconduct] being false." *Roundtree v. United States,* 581 A.2d 315, 321 (D.C.App.1990).

**14.** For example, if the causation of the alleged enlargement of T's vaginal area had been an issue at trial, the appellant's proposed use of evidence of T's sexual conduct might not have been prohibited by our rape shield law—if the evidence were offered to rebut the inference that the appellant's conduct had caused the alleged enlargement. *See West Virginia Rules of Evidence* 404(a)(3) [1994], permitting the use of evidence of the sexual conduct of an alleged victim "where the court determines at a hearing out of the presence of the jury that such evidence is specifically related to the act or acts for which the defendant is charged and is necessary to prevent manifest injustice[.]" *Cf. Tague v. Richards,* 3 F.3d 1133 (7th Cir.1993) (defendant was entitled to introduce evidence regarding child's prior sexual conduct to rebut inference that defendant caused hymenal damage.)

## C.

### Prior Consistent Statements

■ The second assignment of error which we address in this opinion is the appellant's contention that the circuit court erred when it allowed two witnesses to tell the jury what T.M. had told the witnesses about appellant's sexual misconduct toward T.M.

The first witness whose testimony the appellant challenges was T.M.'s aunt, Connie Morgan. On November 18, 1992, T.M. told Ms. Morgan, "Jim [Quinn] had sex with me." At the appellant's trial, Ms. Morgan was allowed to tell the jury what T.M. had said.

The second witness whose testimony the appellant challenges was social worker Michelle Hall. On November 19, 1992, T.M. gave a detailed statement to Ms. Hall describing how the appellant had sexually molested T.M. Ms. Hall also was allowed to tell the jury what T.M. had said.[15]

The trial court admitted Ms. Morgan's and Ms. Hall's testimony about T.M.'s statements as non-hearsay "prior consistent statements,"[16] under *West Virginia Rules of Evidence* 801(d)(1)(B) [1994].[17]

*West Virginia Rules of Evidence* 801(d)(1)(B) [1994] permits what would ordinarily be treated as hearsay evidence to be considered without regard to its hearsay nature. Under this Rule, a prior consistent statement of a declarant who can be cross-examined on the statement is "not hearsay" if there has been "an express or implied charge against the declarant of recent fabrication or improper influence or motive[ ] ..." and the statement is offered to rebut the charge. *Id.*

In *State v. Wood*, 194 W.Va. 525, 531, 460 S.E.2d 771, 777 (1995), this Court mentioned the use of prior consistent statements in a general discussion of evidence going to a witness's credibility. We stated:

At the outset, we note that this issue involves the admission of testimony regarding the credibility of a witness. As observed by the United States Court of Military Appeals, "[t]here are three evidentiary stages which concern the credibility of witnesses at trial: bolstering, impeachment, and rehabilitation." *United States v. Toro*, 37 M.J. 313, 315 (C.M.A. 1993). Bolstering occurs when a party seeks to enhance a witness's credibility before it has been attacked. *Id.* Bolstering is generally disallowed. Impeachment occurs anytime a witness's credibility is attacked, and it may be accomplished in several different ways including, *inter alia*,

---

**15.** A small portion of Ms. Hall's testimony as to what T.M. had told Ms. Hall went beyond what T.M. herself had told the jury about the appellant's conduct. The trial court instructed the jury to disregard that portion of Ms. Hall's testimony.

**16.** The appellant argues that the trial court also relied on the "prompt complaint" rule in allowing Ms. Morgan and/or Ms. Hall to testify to what T.M. had told them, but we do not so read the record.

This Court has held that a prompt complaint made by the victim of a sexual offense is admissible independently of its qualifications as an excited utterance, but that the details of the event or the name of the perpetrator are ordinarily not admissible. Syllabus Point 4, *State v. Murray*, 180 W.Va. 41, 375 S.E.2d 405 (W.Va.1988).

The "prompt complaint" rule was described in *State v. Livingston*, 907 S.W.2d 392, 394 (Tenn. 1995), as having:

... evolved from an expectation that a rape victim would make immediate outcry. Even though the validity of this expectation is flawed, the expectation persists.... "We would certainly prefer to abolish the doctrine

in its entirety, given its genesis in the profoundly sexist expectation that female victims of sexual crimes should respond in a prescribed manner or risk losing credibility. Even though psychologists have proved that victims respond to sexual attacks in no prescribed way, abolition of the doctrine would strip the victim of one of the few methods to rebut the expectation of outcry, now deeply rooted in our culture."

*State v. Livingston, supra* (holding that the prompt complaint rule should not be applied to cases of sexual offenses against children because society does not expect children to immediately report sexual offenses), *quoting, State v. Kendricks*, 891 S.W.2d 597, (Tenn.1994).

**17.** *West Virginia Rules of Evidence* 801(d)(1)(B)[1994] states:

"A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive...."

the following: a witness's character trait for untruthfulness pursuant to *W.Va. R.Evid.* 608(a); prior convictions pursuant to *W.Va.R.Evid.* 609(a); instances of misconduct not resulting in a conviction pursuant to *W.Va.R.Evid.* 608(b); and prior inconsistent statements pursuant to *W.Va. R.Evid.* 613. *See Id.* Rehabilitation, which occurs after a witness's credibility has been attacked, also may be accomplished in a number of different ways including "explanations on redirect examination, corroboration, a character trait for truthfulness, or *prior consistent statements.*" *Toro, supra* at 315 (citation omitted). Credibility issues concerning a witness may be addressed by questioning that witness or through the testimony of another witness.

*Id.* (Emphasis added, footnotes omitted).

A significant issue that has arisen in cases involving the prior consistent statement rule is: when must the prior consistent statement have been made? Must the statement have been made before the asserted motive of the declarant to falsify arose? (This is called a "pre-motive" statement.) Or may prior consistent statements of a declarant whose credibility has been attacked be admitted without regard to when the statement was made?

This evidentiary issue was recently discussed and decided for the federal court system in the case of *Tome v. United States,* 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). *Tome* involved *Federal Rules of Evidence* 801(d)(1)(B) [1987], which is essentially identical to our Rule of the same number.

The facts in *Tome* were somewhat similar to those in the instant case. A defendant was on trial for sexual abuse of his then four-year-old daughter. The prosecution's theory was that the defendant committed assaults upon his daughter while she was in his custody and that the crime was disclosed when the child was spending vacation time with her mother. The defense argued that the allegations were concocted so that the child would not be returned to her father.

At the time of trial, the child in *Tome* was 6½ years old. After she testified and was cross-examined, the prosecution produced six witnesses who testified as to statements that the child had made describing the sexual assaults. The District Court admitted all of the statements under *Federal Rules of Evidence* 801(d)(1)(B) [1987], on the basis that the statements rebutted the implicit charge that the child's testimony was motivated by a desire to live with her mother.

The defendant was convicted and the United States Court of Appeals for the Tenth Circuit affirmed, expressing the view that the child's out-of-court statements were admissible under Rule 801(d)(1)(B), even though they had been made *after* the child's alleged motive to fabricate arose. *United States v. Tome,* 3 F.3d 342 (10th Cir.1993), *rev'd, Tome v. United States,* 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995).

The United States Supreme Court reversed and remanded. *Id.* The Supreme Court held that Rule 801(d)(1)(B) embodies the common law requirement that a prior consistent out-of-court statement of a witness, in order to be admissible to rebut a charge of recent fabrication, improper influence, or improper motive, must have been made *before* the alleged fabrication, influence, or motive came into being.

The Court stated:

The underlying theory of the Government's position is that an out-of-court consistent statement, whenever it was made, tends to bolster the testimony of a witness and so tends also to rebut an express or implied charge that the testimony has been the product of an improper influence. Congress could have adopted that rule with ease, providing, for instance, that "a witness' prior consistent statements are admissible whenever relevant to assess the witness' truthfulness or accuracy." The theory would be that, in a broad sense, any prior statement by a witness concerning the disputed issues at trial would have some relevance in assessing the accuracy or truthfulness of the witness' in-court testimony on the same subject. The narrow Rule enacted by Congress, however, cannot be understood to incorporate the Government's theory.

*Tome v. United States,* 513 U.S. at 159, 115 S.Ct. at 702, 130 L.Ed.2d at 583 (1995).

We agree with the reasoning of the majority in *Tome.* Consequently we hold that under *West Virginia Rules of Evidence* 801(d)(1)(B) [1994] a prior consistent out-of-court statement of a witness who testifies and can be cross-examined about the statement, in order to be treated as non-hearsay under the provisions of said Rule, must have been made before the alleged fabrication, influence, or motive came into being. Having adopted this rule, we apply it to the statements at issue in the instant case.

In his opening statement to the jury, the appellant's counsel argued that:

> ... the State of West Virginia did come in and they took the kids out ... when they did take the kids out ... [T.M.] was attached to her mother and didn't want to leave.... the allegations against Mr. Quinn only surfaced after [T.M.] ... had been taken out of the house [by the Department of Human Services] and had been staying with her aunt.... watch the timing of when these allegations were made ... as to what motive the child might have in this case against Mr. Quinn for making these kinds of accusations.

In other words, the appellant suggested to the jury that T.M. had concocted her allegations against the appellant *after* the State of West Virginia removed T.M. from her mother's home.

However, the evidence at trial was undisputed that T.M. was in fact residing with her mother on November 18, 1992, the day T.M. made her statement in question to Ms. Morgan—and on the next day, when T.M. made her statement in question to Ms. Hall.

It is true that T.M.'s mother had, prior to November 18, 1992, voluntarily surrendered legal custody of her children to the State, eliminating the necessity of the State's pursuing a neglect proceeding. However, T.M. continued to live and reside at her mother's home pursuant to the terms of an "improvement period." T.M.'s spending the night with Ms. Morgan on November 18, 1992, was not the result of any action by the State of West Virginia, but was due to T.M.'s mother's request, because she was too drunk to care for T.M.

T.M. was only removed by the State from her mother's physical custody *after* T.M. made her statements to Ms. Morgan and Ms. Hall charging the appellant with sexual misconduct. Therefore, T.M. made her statements incriminating the appellant to Ms. Morgan and Ms. Hall *before* the occurrence of the event—the removal of T.M. from her mother's home by the State—which the appellant had suggested to the jury was T.M.'s motive for fabricating charges against the appellant. T.M.'s statements thus met the *Tome* "pre-motive" test for prior consistent statements and were not hearsay under *West Virginia Rules of Evidence* 801(d)(1)(B) [1994].

T.M.'s pre-motive prior consistent statements rebutted the specific motive to fabricate which the appellant had presented to the jury. With the judge's limiting instruction, T.M.'s statements did not contain any additional evidence against the appellant beyond what T.M. directly testified to before the jury. T.M.'s statements to Ms. Morgan and Ms. Hall were thus not hearsay and they were relevant. The trial court did not err in admitting the statements.[18]

---

**18.** The record is not clear as to whether the trial court considered the precise issue of *when* T.M. made her statements, in determining that they were non-hearsay prior consistent statements. Appellant's counsel did not specifically object to the temporality aspect of T.M.'s prior consistent statements. That is, counsel did not argue to the court that the statements were not admissible as pre-motive prior consistent statements, because they were made after T.M.'s alleged motive to fabricate arose.

To preserve any such alleged error in the statements' admission, counsel should have made a specific temporality objection, to bring to the court's attention the precise reason why counsel contended that the prior consistent statements were post-motive and thus inadmissible hearsay. "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996). *See United States v. Parodi,* 703 F.2d 768, 783 (4th Cir.1983) (failure to make temporality objection to prior consistent statement constitutes waiver). Because we conclude that the statements were admissible as pre-motive statements, we need not address the waiver issue.

## II.

### Conclusion

We have considered the appellant's other assigned errors. We conclude that they do not warrant discussion and that they are without merit.[19] For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

MAYNARD, Justice, dissenting:

(Filed June 5, 1997)

The trial of a rape or sexual abuse case is often humiliating for the victim. Describing the details of sexual abuse is difficult under the most benign circumstances, let alone in a courtroom packed with strangers. Moreover, until recently, the sexual assault was not the only abuse of the victim. A second attack occurred at trial, where defense counsel impeached the victim with evidence regarding the victim's sexual history. Such impeachment took two forms: (1) opinion or reputation evidence, or (2) proof of specific instances of the victim's past sexual conduct. One consequence of such impeachment was to place the victim on trial along with the defendant. In response to this unsatisfactory situation, states enacted rape shield statutes....

John E.B. Myers, 1 *Evidence in Child Abuse and Neglect Cases* § 5.28 (2d ed.1992). West Virginia has enacted just such a statute. *See* W.Va.Code 61–8B–11 (1986).

This decision is a sword which will be used to pierce the rape shield statute and will cruelly stab like a driven nail into the most vulnerable child victims of rape and will further victimize those children.

Allowing child victims to be cross-examined regarding prior false allegations really permits inquiry into the victim's past sexual behavior in violation of our rape shield statute and the practical and actual result is a brutal attack on the general credibility of the child. I agree completely with the trial judge in the case of *United States v. Cardinal,* 782 F.2d 34, 36 (6th Cir.1986), who said:

I don't see how you can separate evidence of a victim's past sexual behavior from the fact that she had made an allegation of rape and then withdrawn [sic] it. I think they are interwoven. This is a thirteen-year-old young lady [and under] the spirit of Rule 412, it seems to me that it's just this type of allegation that this young woman should be protected from.

I would not permit *any* cross-examination of child victims regarding any alleged prior false allegations. Accordingly, for the foregoing reasons, I dissent.

WORKMAN, C.J., concurring:

(Filed July 22, 1997)

I am deeply concerned that the law enunciated by the majority, if not cautiously and judiciously applied, could have devastating consequences on abused children, and could create substantial unfair prejudice to the State in prosecutions of child sexual abuse. However, I do concur because the majority opinion is soundly reasoned, and comports with the great weight of authority across the country. I feel compelled to write separately, however, to clarify that the "strong probability" test requires a great deal more than an individual's flat denial of having committed the alleged act(s) of abuse coupled with an unsupported allegation of prior false accusations. This is required for several critical reasons. First, as Justice Maynard accurately notes in his dissent, the potential for further victimization of abused children is immense. Any time we permit children to be cross-examined about allegations of prior abuse, the possibility of causing additional trauma to a child is unfortunately an attendant reality to any potential for the disclosure of truth.

Furthermore, and even more disturbing, there is huge potential for diverting the at-

---

**19.** The appellant argues that the trial court should have given a "great care and caution" instruction regarding T.M.'s testimony. Because there was significant evidence corroborating T.M.'s testimony, the trial court did not err in refusing to give the instruction. *See State v. Derr,* 192 W.Va. 165, 180, 451 S.E.2d 731, 746 (1994). We also find no merit in the appellant's arguments that T.M. was incompetent to testify, and that the prosecution used an excessive number of leading questions.

tention of jurors onto side-issues which could result in great unfair prejudice to the prosecution in child sexual cases. Thus, it is incumbent upon the lower courts to require strong and very substantial proof of the falsity of prior accusations before proceeding to permit the admission of such evidence, even if only as to credibility. I am concerned with the trial bench's perception of what is necessary to constitute such a showing of "strong probability." The evidence necessary to establish a strong probability must not be merely credibility evidence (e.g. finding the testimony of one who claims to have been falsely accused more credible than the victim's), but must be strong *factual* evidence that tends to prove clearly and convincingly the falseness of the prior accusations. *See Little v. State,* 413 N.E.2d 639 (Ind.App.1980) (holding that previous false accusations "must be demonstrably false" before such evidence is admitted); *see generally* Nancy M. King, Annotation, *Impeachment or Cross–Examination of Prosecuting Witness In Sexual Offense Trial By Showing That Similar Charges Were Made Against Other Persons,* 71 A.L.R.4th 469, 482–83 § 4[b] (1989 & 1996 Supp.). Otherwise, the purpose of imposing such a standard will have gone up in smoke, and the child victim will be placed on trial.

The preferred type of evidence sufficient to meet the strong probability standard is "evidence from an independent source that the collateral allegation was false." *See Commonwealth v. Nichols,* 37 Mass.App.Ct. 332, 639 N.E.2d 1088, 1089 (1994); *see also Covington v. State,* 703 P.2d 436, 442 (Alaska App.1985) (adopting rule that defendant must first, out of jury's presence, demonstrate falseness of allegations by showing either the disproof of the charges or the witness' admission of falsity). While it will be a rare case when, like in *Nichols,* the alleged victim admits to having made false allegations, it is necessary to be cautious in permitting a defendant to use a claim of prior false allegations as a sword to assist in his/her defense without a preliminary showing that such prior false allegations are capable of proof other

than through the testimony of the defendant. Because the possibility that a defendant might attempt to use a claim of prior false accusations as a shield is so palpable, we must provide the necessary safeguards against the improper use of this evidence.

When the proffered evidence amounts to an unsworn statement containing "inadmissible hearsay statements," as in *People v. Duggan,* 229 A.D.2d 688, 645 N.Y.S.2d 158 (N.Y.App.Div.1996), courts should, as in *Duggan,* determine such evidence insufficient to probe into such allegations. *Id.* at 160; *see also State v. Kringstad,* 353 N.W.2d 302, 311 (N.D.1984) (finding that "unsubstantiated testimony ... would not constitute a quantum of evidence sufficient to establish the falsity of the previous charge"). It is imperative that the lower courts take seriously their obligation to require, prior to permitting *any* cross-examination of a child victim on the issue of prior false accusations, that the evidence proffered is both strong factually, and qualitatively and quantitatively sufficient to demonstrate the strong probability of the falsity of such accusations. *See Howard v. State,* 200 Ga.App. 188, 407 S.E.2d 769, 771 (1991) (upholding trial court's granting of State's motion in limine to prohibit defendant's introduction of false allegations based on failure to demonstrate "reasonable probability" that allegations were false). The use of such evidence should be a very rare exception. Furthermore, a motion to admit such prior false accusation evidence (and the court's ruling thereon) should be made prior to trial, and the State should be entitled to have an adverse determination reviewed by this Court through a writ of prohibition. Although the right to appeal is limited in West Virginia,[1] the State may seek a writ of prohibition in a criminal case where it can demonstrate that it was deprived of its right to prosecute the case or deprived of a valid conviction. *See* Syl. Pt. 5, *See State v. Lewis,* 188 W.Va. 85, 422 S.E.2d 807 (1992). Such evidence, if wrongfully admitted, would be so unfairly prejudicial to the State that this Court should accept for review and expedite

---

**1.** We have previously urged the Legislature to "expand the statutory opportunity for appeal in West Virginia, including appeals of some inter-

locutory rulings." *State ex rel. Allen v. Bedell,* 193 W.Va. 32, 39, 454 S.E.2d 77, 84 (1994) (Cleckley, J., concurring).

hearing of such extraordinary writs. In any case in which evidence of prior false accusations is admitted, there should be a cautionary instruction given to the jury for the purpose of advising the jury regarding the limited purpose for which such evidence can be considered.

Lastly, the type of evidence permitted by the majority opinion should be much more closely scrutinized in the context of child sexual abuse than in the adult context. The very fact of the existence of prior accusations of sexual assault by a child, in and of itself, has a tendency to cause finders of fact to disbelieve the child in the case before them. Sexual assault of children is so out of the realm of the ordinary human experience of most jurors that it is difficult to perceive that there are children who live in certain sociological milieu where they are repeatedly sexually abused. Yet, most of the sociological literature reflects that "[m]ultiple abuse episodes are very common, occurring in more than half of the cases in nonclinical samples and in 75% of clinical samples of children." John Briere et al., *The APSAC Handbook on Child Maltreatment* 53 (1996) (citing studies performed by Conte & Schuerman, 1987, Elliott & Briere, 1994). Only through an extremely judicious (and I might add, suspicious) use of prior false accusation testimony will we be able to assure that the legal system doesn't re-abuse children.