No. 11-1504  -    <u>State v. Jack J.</u>

**FILED**

**April 11, 2013**

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Davis, J., dissenting:

The majority affirmed the defendant's convictions for sexual offenses against his girlfriend's adolescent daughter. In doing so, the majority's opinion affirmed the trial court's ruling prohibiting the defendant from presenting evidence that the alleged victim previously had falsely accused at least twelve other people of sexual misconduct toward her. Because I believe the defendant had a constitutional right, under the facts of this case, to inform the jury that the alleged victim previously had made numerous, unfounded allegations of sexual misconduct by other people, I dissent.[1]

**The Defendant's Constitutional Right to Confront His Accuser Was Violated**

"Probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case." *Pointer v. Texas*, 380 U.S. 400, 404, 85 S. Ct. 1065, 1068, 13 L. Ed. 2d 923 (1965). Indeed, "[t]he right to confront and to cross-examine witnesses is

---

[1]I wish to be perfectly clear. This case was not about informing the jury that the alleged victim actually had engaged in sexual relations with others. The *sole issue* in this case was informing the jury that the alleged victim previously had made numerous, unfounded sexual misconduct allegations against others.

1

primarily a functional right that promotes reliability in criminal trials." *Lee v. Illinois*, 476

U.S. 530, 540, 106 S. Ct. 2056, 2062, 90 L. Ed. 2d 514 (1986).  For this reason, the United

States Supreme Court scrupulously has guarded against "restrictions imposed by law or by

the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18,

106 S. Ct. 292, 294, 88 L. Ed. 2d 15 (1985).  In fact, the Confrontation Clause of the Sixth

Amendment of the United States Constitution guarantees a criminal defendant the right to

be confronted with the witnesses against him or her.  Moreover, the Supreme Court has held

that the rights under the Confrontation Clause mean more than merely being allowed to

confront a witness physically.  In *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S. Ct. 989,

998, 94 L. Ed. 2d 40 (1987), the Court held that "[t]he Confrontation Clause provides two

types of protections for a criminal defendant: the right physically to face those who testify

against him, and the right to conduct cross-examination." *See also Douglas v. Alabama*, 380

U.S. 415, 418, 85 S. Ct. 1074, 1076, 13 L. Ed. 2d 934 (1965) ("[A] primary interest secured

by [the Confrontation Clause] is the right of cross-examination.").  The critical importance

of cross-examination has been set out as follows:

> Cross-examination is the principal means by which the
> believability of a witness and the truth of his testimony are
> tested.  Subject always to the broad discretion of a trial judge to
> preclude repetitive and unduly harassing interrogation, the
> cross-examiner is not only permitted to delve into the witness'
> story to test the witness' perceptions and memory, but the
> cross-examiner has traditionally been allowed to impeach, *i.e.*,
> discredit, the witness. . . .  A more particular attack on the
> witness' credibility is effected by means of cross-examination
> directed toward revealing possible biases, prejudices, or ulterior

2

motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony.

*Davis v. Alaska*, 415 U.S. 308, 315-17, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974) (internal quotations and citations omitted). *See also Maryland v. Craig*, 497 U.S. 836, 845, 110 S. Ct. 3157, 3163, 111 L. Ed. 2d 666 (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."); *Pointer v. Texas*, 380 U.S. 400, 405, 85 S. Ct. 1065, 1068, 13 L. Ed. 2d 923 (1965) ("There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.").

The decision in *Davis* illustrates the problem of denying a defendant the right to cross-examine a key witness with relevant evidence that attacks the witness' credibility. The defendant in *Davis* was convicted of burglary and grand larceny. During the trial, the court refused to allow the defendant to cross-examine a key prosecution witness about the witness' probation status following an adjudication of juvenile delinquency. The trial court found that, under the state's laws, such evidence was not admissible. The Supreme Court

3

reversed the conviction upon finding the defendant's rights under the Confrontation Clause

were violated:

> In the instant case, defense counsel sought to show the existence of possible bias and prejudice of Green, causing him to make a faulty initial identification of petitioner, which in turn could have affected his later in-court identification of petitioner.

> We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Green's testimony which provided a crucial link in the proof . . . of petitioner's act. The accuracy and truthfulness of Green's testimony were key elements in the State's case against petitioner. . . .

> . . . .

> [P]etitioner sought to introduce evidence of Green's probation for the purpose of suggesting that Green was biased and, therefore, that his testimony was either not to be believed in his identification of petitioner or at least very carefully considered in that light. Serious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry. In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record . . . is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness.

*Davis*, 415 U.S. at 317-19, 94 S. Ct. at 1110-12, 39 L. Ed. 2d 347. *See Olden v. Kentucky*,

488 U.S. 227, 109 S. Ct. 480, 102 L. Ed. 2d 513 (1988) (per curiam) (holding that trial

court's refusal to allow defendant to impeach victim's testimony by cross-examining victim about possible motive to lie deprived defendant of his right to confrontation); *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674 (1986) (precluding defendant from questioning witness about State's dismissal of pending public drunkenness charge against him and concluding that, "[b]y thus cutting off all questioning about an event . . . that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony," the trial court's ruling violated the defendant's rights under the Confrontation Clause).

The decision in *Davis* illustrates the Supreme Court's general guidelines for enforcing the Confrontation Clause in the context of limiting cross-examination of a testifying witness. Federal courts of appeal have addressed the more specific issue of denying a defendant the right to cross-examine a sexual assault victim regarding her prior unfounded allegations of sexual misconduct by others. In *Redmond v. Kingston*, 240 F.3d 590 (7th Cir. 2001), the defendant was convicted by a Wisconsin jury of sexually assaulting a fifteen-year-old victim. During the trial, the defendant was denied the right to confront the victim concerning a prior unfounded claim that she had been forcibly raped by another person. In a habeas corpus appeal to the Seventh Circuit Court of Appeals, the defendant argued that the trial court's restrictions on his cross-examination of the victim violated his rights under the Confrontation Clause. The Seventh Circuit agreed:

5

The evidence . . . was not cumulative, or otherwise peripheral, considering that testimony by [the victim] was virtually the only evidence of Redmond's guilt that the prosecution had. . . . The only evidence that was relevant to her credibility in Redmond's case . . . was that within the preceding year she had made up a story about being forcibly raped. Whether or not she had had sex with the alleged rapist was irrelevant, since Redmond was not prepared to try to prove that she had not. For unexplained reasons the Wisconsin court of appeals thought that if Redmond's lawyer had been permitted to ask [the victim] whether she had ever made a false charge of forcible sexual assault, the door would have been opened to an inquiry into whether she had had sex on that occasion at all. We cannot think of any reason why. . .

And thus the court's ruling, though ostensibly based on the rape-shield statute, derives no support from that statute. The statute protects complaining witnesses in rape cases (including statutory-rape cases) from being questioned about their sexual conduct, but a false charge of rape is not sexual conduct. . . . . The false-charge "exception" to the rape-shield statute is not really an exception, but rather a reminder of the limited meaning of "sexual conduct" as defined in the statute. The only basis for the court's ruling was the general principle of the law of evidence . . . that relevant evidence may be excluded if its probative value is substantially outweighed by its prejudicial (confusing, or cumulative) effect. When that unexceptionable rule is applied as it was here to exclude highly probative . . . evidence tendered by a criminal defendant that is vital to the central issue in the case ([the victim's] credibility), the defendant's constitutional right of confrontation has been infringed. . . . .

*Redmond*, 240 F.3d at 592 (internal citations omitted). *See also Sussman v. Jenkins*, 636 F.3d 329, 357 (7th Cir. 2011) (applying *Redmond* and holding: "The jury reasonably could have concluded that [the victim] was prone to use allegations of sexual abuse against father figures as a means either of gaining their attention or as a means of punishing them for abandoning

6

him."); *Kittelson v. Dretke*, 426 F.3d 306, 322-23 (5th Cir. 2005) (following *Redmond* and holding: "In a case that turned entirely on the credibility of the complaining witness, the state courts' restriction on Kittelson's ability to challenge that credibility violated his clearly-established confrontation and due process rights and cannot be considered harmless.").

In *White v. Coplan*, 399 F.3d 18 (1st Cir. 2005), a New Hampshire jury convicted the defendant of three counts of sexual assault against two young girls. At trial, the defendant was forbidden to offer evidence that both girls had previously made such accusations against other persons. In his habeas corpus appeal to the First Circuit Court of Appeals, the defendant argued that this restriction violated his Confrontation Clause rights. The First Circuit agreed:

> In this case, White's evidence was not merely "general" credibility evidence. . . .
>
> The evidence in this case was considerably more powerful. The past accusations were about sexual assaults, not lies on other subjects; and while sexual assaults may have some generic similarity, here the past accusations by the girls bore a close resemblance to the girls' present testimony–in one case markedly so. In this regard the evidence of prior allegations is unusual.
>
> If the prior accusations were false, it suggests a pattern and a pattern suggests an underlying motive (although without pinpointing its precise character). . . . Many jurors would regard a set of similar past charges by the girls, if shown to be false, as

7

very potent proof in White's favor.

This "if," of course, is the heart of the matter. If the witness were [sic] prepared to admit on the stand that a prior accusation of similar nature was false, it is hard to imagine good reason for excluding the evidence. Prior admitted lies of the same kind in similar circumstances could powerfully discredit the witness. . . .

. . . .

White was accused of serious crimes–witness his sentence–and virtually everything turned on whether the two girls were to be believed. White had almost no way to defend himself except by impeachment. . . . [C]ross-examination to show prior similar accusations by the girls . . . could easily have changed the outcome.

Evidence suggesting a motive to lie has long been regarded as powerful evidence undermining credibility, and its importance has been stressed in Supreme Court confrontation cases. . . . In our case the nature of the motive may be unknown; but if the prior accusations are similar enough to the present ones and shown to be false, a motive can be inferred and from it a plausible doubt or disbelief as to the witness' present testimony.

*White*, 399 F.3d at 24-26 (internal citations omitted). *But see Jordan v. Warden, Lebanon*

*Corr. Inst.*, 675 F.3d 586 (6th Cir. 2012) (finding no constitutional violation); *Piscopo v.*

*Michigan*, 479 Fed. App'x. 698 (6th Cir. 2012) (same); *Abram v. Gerry*, 672 F.3d 45 (1st Cir.

2012) (same); *United States v. Frederick*, 683 F.3d 913 (8th Cir. 2012) (same); *United States*

*v. Tail*, 459 F.3d 854 (8th Cir. 2006) (same); *Boggs v. Collins*, 226 F.3d 728, 740 (6th Cir.

2000).

8

In the instant case, the majority opinion found that the defendant failed to meet the standard of proof required to introduce evidence that the alleged victim previously had falsely accused other persons of sexual misconduct against her. The standard of proof required to introduce such evidence was set out in *State v. Quinn*, 200 W. Va. 432, 490 S.E.2d 34 (1997). Under *Quinn,* the defendant had to establish by "*strong and substantial proof . . .* the actual falsity of an alleged victim's other statements[.]" Syl. pt. 2, in part, *id.* (emphasis added). I believe the defendant met his burden of proof under *Quinn*. I also believe that the majority opinion superimposed a higher burden than what is required by *Quinn*, and this heightened standard violated the defendant's rights under the Confrontation Clause.[2]

Under the decision in *Quinn*,

> "[a] defendant who wishes to cross-examine an alleged
> victim of a sexual offense about or otherwise introduce evidence

---

[2]In determining whether restrictions on cross-examination violate the Confrontation Clause, courts look at: (1) whether the excluded evidence was relevant; (2) whether there were other legitimate interests outweighing the defendant's interest in presenting the evidence; and (3) whether the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness. *United States v. Larson*, 495 F. 3d 1094, 1103 (9th Cir. 2007). *See United States v. Roussel*, 705 F.3d 184, 194 (5th Cir. 2013) ("The Sixth Amendment's Confrontation Clause is violated if the defendant [can] show that a reasonable jury might have had a significantly different impression of the witness's credibility if defense counsel had been allowed to pursue the questioning." (internal quotations and citation omitted)); *Ortiz v. Yates*, 704 F.3d 1026, 1037 (9th Cir. 2012) ("The whole point of the effective, permissible cross-examination protected by the Confrontation Clause is to diminish the witness' credibility with the jury and thereby render a conviction less likely.").

about other statements that the alleged victim has made about being the victim of sexual misconduct must initially present evidence regarding the statements to the court out of the presence of the jury and with fair notice to the prosecution, which presentation may in the court's discretion be limited to proffer, affidavit, or other method[.]

Syl. pt 3, in part, *Quinn*, 200 W. Va. 432, 490 S.E.2d 34. In the instant case the defendant's brief indicated he submitted the following proffer of the falsity of the victim's prior allegations against others:

> 1. The child, . . . , falsely reported that she was subjected to inappropriate sexual contact by [C.M.], III and [C.M.], IV. *The child has admitted to a mental health professional that the reports were false* claiming that she made the reports because she was confused by her mother. [D.H.H.R. Assessment dated 3/23/03 at p. 2]. *An investigation was conducted by the Ohio County Sheriffs office and by D.H.H.R. and found these reports to be unsubstantiated.*
>
> 2. The child, . . . , falsely reported that she was subjected to inappropriate sexual contact by both [S.K.] and her husband, [P.K.], or that she dreamed of inappropriate sexual contact with [S.K.] and her husband, [P.K.]. *The child has admitted to a mental health professional that the reports were false. An investigation by D.H.H.R. found the reports to be unsubstantiated.* There are numerous reports by [the child's mother] of dream sexual assaults including early reports by [the victim] that the sexual assaults by Jack [J.] were dreams. Moreover, the child has reported to [her mother] that she dreamed that she was sexually assaulted by Lt. [C.] during his interview of the child. [Taped interview of Jack [J.] by Lt. [C.], interviews of [the mother], [M. M], and [M. M.]].
>
> A. The Child and Adolescent Needs and Strengths and Comprehensive Multisystem Assessment dated 2/28/07 contains the following

language:

"This placement was disrupted when [the alleged victim] began to fantasize that her foster parents were going to have sexual intercourse in front of her and then involve her in the act. [The alleged victim] also began to have sexual dreams where her foster mother was having sex with numerous men." (P.3)

B. "Clear evidence of antisocial behavior including but not limited to lying, stealing, manipulating others, sexual aggression, violence towards people, property or animals." [P. 11].

C. "[The alleged victim] has fantasized that her former foster parents were going to sexually abuse her. She most recently was having dreams that her foster mother was having sex with other men (like she witnessed her mother doing) and was going to also include [the alleged victim] in the act." (P. 18).

D. "Since [the alleged victim] has been in placement at Pomegrante, she disclosed that while living in the home of her biological mother, she sexually assaulted an infant, male cousin by inserting a coat hanger in his penis. This happened in her bedroom. When she couldn't get the hanger out, the baby began crying and she yanked it out, put his diaper back on, and went downstairs." (p.18).

3. The Section II, Designated Individual Case Reviewer report dated 8/7/2007 contains the following language:

A. "[The alleged victim] has fantasized that her former foster parents were going to sexually abuse her. She most recently was having dreams that her foster mother was having sex with other men (like she witnessed her mother doing) and was going to also include [the alleged victim] in the act." (p. 13).

11

B.  The child reports sexually oriented nightmares at the [K.] residence on pp. 18-19.

C.  "According to information obtained through this reviewer's interview with [S.K.], [the alleged victim] had been having some bizarre dreams, thoughts, and behaviors about two weeks prior to her removal from the [K.] home. [The alleged victim's] bizarre behaviors allegedly started when Mr. and Mrs. [K.] were sitting next to each other on the couch in the living room with [the alleged victim] also being in the room with them. [The alleged victim] reportedly began to get very nervous and anxious that [Mr. and Mrs. K.] were going to have sex and make her watch/participate.  Around the same time, [the alleged victim] began to report having dreams that involved [S.K.] having sex with numerous men. [The alleged victim] went to school one day and told school personnel that she had seen Mr. [K.] in his underwear. The school called [S.K.] regard to this. Sally adamantly denied that this could have happened as her husband is a long-distance truck driver and is only home on weekends. She was positive [the alleged victim] had never seen him dressed inappropriately." (p. 21).

4. The child, has reported that her cousin, . . . , inserted a hair brush into her vagina.  The report is memorialized in the medical records of Dr. Romano for 7/18/01 with a report of "no obvious evidence of genital trauma."  Further details of the report provided by [relatives of the alleged victim]; report mentioned in D.H.H.R. Assessment dated 3/23/03 at p. 2.

5. The child, . . . , has *falsely reported that she was sexually abused by [John G.]. [The alleged victim] has admitted that the report was false*. [D.H.H.R. report of September 14,2009 at pages 1 & 5].  An initial recorded interview at Harmony House resulted in the alleged victim stating that the report was false.  In a later unrecorded interview by Linda

12

Reeves, the child reportedly claimed that the report was true. [J.G.] and an eyewitness both deny that the report is true. In an agreed upon in camera interview by the Court, [the alleged victim] stated that the report was true while the eyewitness denied the truth of the report.

6. The child, . . . , has *falsely reported that she was sexually abused by various men on at least three occasions*. [D.H.H.R. report of September 14, 2009 at pages 3 & 5].

7. The child, . . . , has *falsely reported that she was sexually abused by [P.K.]*, a grandfather and a principal. [D.H.H.R. report of September 14, 2009 at page 4).

8. *The child has reported that she saw her former foster sibling . . . naked. The child later denied that she saw [her former foster sibiling] naked or that she made the report.* [February 9, 2009 report of Solutions Outpatient Services].

9. The alleged victim has reported that she saw [D.B.] naked. [S.K.'s notes on page 1]. *The alleged victim has also reported that [D.B.] had intercourse with her.* [S.K.]'s notes for Nov. 22, 2006; Pomegrante Report p. 9/33]. The report that [W.] and [D.B.] had sex with [the alleged victim] touched [sic] upon in the interview by Linda Reeves. *The alleged victim denied that [D.B.] did anything to her except spanking her in that interview*. [Hogan interview at pp. 10 & 12.].

10. The alleged victim has reported that she has had sex with her cousin . . . and was caught in the act. [Pomegrante Report p. 27/33].

(Emphasis added).

The above evidence submitted to the trial court shows that the victim alleged sexual misconduct against: (1) C.M., III, and C.M., IV, which was found to be

unsubstantiated by a local sheriff and DHHR; (2) S. K. and P. K., which was found to be unsubstantiated by DHHR; (3) a cousin, which was found to be medically unsubstantiated; (4) social worker J.G., which was later retracted, then reaffirmed, then retracted, then reaffirmed; (5) three unnamed men; (6) a foster sibling W.; (7) D.B.; and (8) a second cousin In total, the defendant presented evidence that the alleged victim has accused at least twelve different people of engaging in sexual misconduct with her.

The majority opinion held that the defendant failed to prove that the twelve people did not engage in sexual misconduct with the alleged victim. Such a finding is disturbing. The defendant in this case was able to submit credible evidence, that was documented in DHHR reports, that law enforcement and DHHR had investigated many of the allegations by the alleged victim and found them unsubstantiated.

To the extent that the defendant's proffer was insufficient, the only way that he could satisfy the majority's interpretation of the "strong and substantial proof" requirement would be to provide the trial court with judgments of acquittal of the other persons accused of sexual misconduct by the alleged victim. This heightened standard is unconscionable and violated the defendant's constitutional right of confrontation.[3] I do not

---

[3]The unconscionability of this heightened standard is found in the fact that the prosecutor did not bring charges against any of the other persons falsely accused by the alleged victim–thus it was impossible for the defendant to submit judgments of acquittal.

make this assessment lightly. The Fourth Circuit reviewed this Court's opinion in *Quinn* in a habeas corpus proceeding. Although the Fourth Circuit affirmed *Quinn*, it did so by expressly noting that it did "not address the broader issue of whether West Virginia's standard of strong and substantial proof of falsity is objectively reasonable in light of relevant Supreme Court precedent." *Quinn v. Haynes*, 234 F.3d 837, 847 (4th Cir. 2000). I submit that the standard of "strong and substantial proof," as interpreted in this case by the majority opinion, is not objectively reasonable under the decisions of the United States Supreme Court. The defendant in this case sought "to expose to the jury the facts from which [the] jurors . . . could appropriately draw inferences relating to the reliability of the [victim]." *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986) (internal quotations and citation omitted). *See also Berger v. California*, 393 U.S. 314, 315, 89 S. Ct. 540, 541, 21 L. Ed. 2d 508 (1969) ("[O]ne of the important objects of the right of confrontation was to guarantee that the fact finder had an adequate opportunity to assess the credibility of witnesses."). However, because the trial court prohibited cross-examination of the alleged victim concerning prior unfounded allegations of sexual misconduct by others, "[t]he jury was essentially misled, by the empty gesture of cross-examination, to believe that the defense attorney had been permitted to use all the tools at his disposal to expose weaknesses in [the alleged victim's] testimony." *Van Arsdall*, 475 U.S. at 688, 106 S. Ct. at 1440, 89 L. Ed. 2d 674.

15

In the final analysis, I agree with the dissenting opinion in *Abram v. Gerry*, 672

F.3d 45(1st Cir. 2012):

> The specter of an adult, particularly one in a position of trust . . ., sexually abusing [a] minor [child] is enough to incense even the most equanimous person and to wish upon such a miscreant the full retributive weight of the law. But there lies the catch: the law. We live in an ordered society, and to keep it ordered for the benefit of the whole of society, we are bound to apply the law, not just to do what we believe the abominable person charged may justly deserve.

*Abram*, 672 F.3d at 53 (Torruella, J., dissenting). In view of the foregoing, I respectfully

dissent.